Patricia A. DAVENPORT, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 94–3623.

United States Court of Appeals,
Federal Circuit.

July 27, 1995.

John L. Nance, Tacoma, WA, argued, for petitioner.

Carol L. Wallack, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for respondent. With her on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and James M. Kinsella, Asst. Director.

Before RICH, LOURIE, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Patricia A. Davenport appeals from a decision of the Merit Systems Protection Board (MSPB), Docket No. SE–0831–94–0211–I–1, which affirmed a decision of the Office of Personnel Management (OPM) awarding her 39.15% of her ex-husband's survivor annuity. Because the MSPB's decision was based on a misreading of the Qualified Domestic Relations Order at issue in this case, we reverse and remand.

## I

Patricia Davenport was married to Richard Davenport from December 2, 1967, until their divorce in June of 1986. The divorce is memorialized by a decree issued by a Washington state court. The decree allocated the marital property between Patricia and Richard Davenport. Pursuant to the decree, the state court subsequently issued a Qualified Domestic Relations Order (QDRO) that specified Patricia Davenport's rights to the retirement and survivorship benefits attributable to Richard Davenport's service as a federal government employee.

On August 11, 1986, Richard Davenport married Jean Gray–Davenport. He was married to her when he died in May of 1992. Richard Davenport was continuously in federal service from 1957 until his death.

The question in this case is what percentage of a full survivor annuity Patricia Davenport should be awarded. The parties agree that this question must be answered by construing the following language in the March 23, 1987, QDRO:

Patricia Davenport shall be entitled to receive from the plan the following benefits:

a. From the pension plan, 50% of Richard Davenport's retirement benefits based on 28 years, 7 months and 1 day, over his total years of service with the Civil Service. The total years of service are to be determined at the time of his retirement or upon his leaving the service of the Civil Service. Furthermore, Patricia Davenport shall be entitled to this same percentage of any lump sum payment

from Mr. Davenport's Civil Service Retirement fund.

... The Alternate Payee [Patricia Davenport] shall have all applicable rights as to a survivor annuity as to the portion of the retirement benefits awarded to her hereunder.

After Richard Davenport's death, a question arose as to the proper disposition of the survivor annuity. OPM initially determined that Patricia Davenport was entitled to 71.16% of the total survivor annuity. OPM subsequently recalculated the percentage and determined that Patricia Davenport was entitled to 78.3% of the annuity. After the first reconsideration decision, Jean Gray–Davenport, who will receive the portion of the survivor annuity that does not go to Patricia Davenport, moved to intervene and registered an objection. OPM then issued a second reconsideration decision in which it reinterpreted the QDRO language and reduced Patricia Davenport's share of the survivor annuity to 39.15%.

An MSPB Administrative Judge issued an initial decision affirming the 39.15% figure for Patricia Davenport's share. That decision became final when the MSPB denied Patricia Davenport's request for reconsideration. Patricia Davenport then appealed to this court.

## II

■ Section 8341(h)(1) of Title 5 of the United States Code provides that "a former spouse of a deceased employee ... is entitled to a survivor annuity under this subsection, if and to the extent expressly provided for ... in the terms of any decree of divorce ... or any court order or court-approved property settlement agreement incident to such decree." 5 U.S.C. § 8341(h)(1). The QDRO at issue in this case is a court-approved property settlement agreement within the meaning of section 8341(h)(1).

The QDRO begins by addressing Richard Davenport's retirement benefits. Richard retained all the rights to one half of the retirement benefits accrued during the marriage, and Patricia was accorded rights in the other half. As of the date of the divorce, Patricia was entitled to her 50% portion of the total amount of retirement benefits. Thus, if Richard had retired on the day of the divorce, Patricia and Richard would have divided his retirement benefits equally. Because Richard remained in federal service following the divorce, and because it was determined that Patricia should not share in the benefits that accrued after the divorce, the QDRO prorated the retirement benefits to adjust for the length of Richard's federal service after the divorce. The QDRO calculated the prorated share by dividing the service time for which Patricia was entitled to compensation (i.e., all of Richard's service time up to the divorce) by Richard's total service time.

On the date that Richard Davenport died, the proration percentage was 78.3%—that is, the length of Richard's federal service after his divorce was 21.7% of his total period of federal service. Had Richard retired in May 1992, Patricia would have been entitled to her 50% portion of 78.3% of Richard's retirement benefits, i.e., 39.15% of the entire retirement benefits package. Richard and his new wife, Jean Gray–Davenport, would have shared the remaining 60.85%.

The QDRO language at issue in this case deals with survivor annuities. With respect to survivorship rights, the QDRO states that Patricia "shall have all applicable rights as to a survivor annuity as to the portion of the retirement benefits awarded to her hereunder." As we interpret that language, the "portion of the retirement benefits awarded to her hereunder" refers to the phrase "50% of Richard Davenport's retirement benefits" that is found in the retirement benefits section of the QDRO. Thus, the survivor annuity sentence directs that Patricia is entitled to the same prorated share of the entire survivor annuity that she received of her 50% portion of the retirement benefits. Because she would have been entitled to 78.3% of her 50% portion of the retirement benefits, we conclude that she should receive 78.3% of the survivor annuity.

That conclusion is consistent with the usual relationship between retirement and survivor benefits. A retirement benefit is normally expected to be shared by the retiree and the

retiree's spouse. A spousal survivor annuity, by contrast, normally goes to only a single surviving spouse. Consistent with that expectation, a spousal survivor annuity ordinarily amounts to only about half of the annuity that would have been paid to the retiree. *See* 5 U.S.C. §§ 8341(b), 8442(b). That ratio results in a roughly constant income stream for a retiree's spouse who becomes a surviving spouse after the retiree's death.

OPM reads the QDRO to provide that Patricia's percentage share of the survivor annuity is the same as her percentage share of the retirement benefits. If the order had intended that result, it likely would have said so directly. Moreover, OPM's interpretation ignores the relationship, noted above, between retirement and survivor benefits. OPM's interpretation of the QDRO in this case would result in a precipitous drop in Patricia's income from almost one-half of Richard's retirement annuity to a survivor annuity of only about half that amount. We can discern no hint that the parties intended to make Patricia's rights turn so dramatically on whether Richard was retired or dead.

The interpretation of the QDRO that we adopt is further supported by the language of the divorce decree on which the QDRO was based. In allocating the marital property between Patricia and Richard, the decree awarded Patricia "[o]ne-half of all interest in the husband's pension rights, as well as all survivor benefits." That language makes clear that the parties intended Patricia to begin with a right to one-half of the retirement benefits, but *all* (not one-half) of the survivor benefits, and that they expected the QDRO to reflect that understanding. The QDRO simply provided for the gradual reduction of Patricia's interest in the retirement benefits and in the survivor annuity, according to a proration formula based on the length of Richard's post-divorce federal service.

■ OPM acknowledged that the divorce decree was consistent with the interpretation of the QDRO favorable to Patricia, but it concluded that it was not permitted to consult the divorce decree in determining the meaning of the QDRO. The Administrative Judge likewise regarded himself as barred from considering the divorce decree in attempting to determine the meaning of the QDRO. The Administrative Judge noted that the pertinent statute, 5 U.S.C. § 8341(h)(1), provides that a former spouse shall receive a survivor annuity only "to the extent expressly provided for in the terms of any decree of divorce ... or any court order or court-approved property settlement incident to such decree." In addition, the Administrative Judge pointed to an OPM regulation, 5 C.F.R. § 838.1016, which provides that when there are competing court orders relating to a former spouse, the one last issued will govern. From those authorities, the Administrative Judge concluded that he could not consult the divorce decree, even as an aid in construing the QDRO.

We do not think the statute and the regulation bar reference for all purposes to the divorce decree, the document on which the QDRO was based. The statute requires that the pertinent court order or property settlement "expressly" provide for a survivor benefit, so as to ensure that OPM will not contrive a disposition that the state court did not contemplate. *See McDannell v. United States Office of Personnel Management*, 716 F.2d 1063, 1065–66 (5th Cir.1983); *Thomas v. Office of Personnel Management*, 46 M.S.P.R. 651, 654 (1991). That statutory purpose, however, is not promoted—and in fact is frustrated—by holding that the divorce decree cannot be consulted in determining the precise meaning of a QDRO that *does* expressly provide for a survivor benefit to a former spouse. If the purpose of the statute is to ensure that OPM will respect the disposition intended by the state court order, OPM should be free in such a case to consult the divorce decree when the decree clarifies the meaning of the QDRO.

We also do not think that reference to the divorce decree is forbidden by the regulation providing that the last issued order will control the disposition of the survivor benefit. That regulation was obviously designed to ensure that OPM would respect changes in the parties' respective rights ordered by state courts. It would be a distortion of that purpose to apply the regulation to a case

such as this one, where the purpose of consulting the divorce decree is not to substitute an earlier disposition of rights for a later one, but simply to determine precisely how the later order was intended to work.

In sum, the QDRO and the divorce decree on which the QDRO was based both support the conclusion that Patricia Davenport is entitled to 78.3% of Richard Davenport's survivor annuity. OPM's decision awarding Patricia Davenport only half that amount was therefore incorrect.

### III

The decision of the MSPB is reversed and the case is remanded for further proceedings in accordance with this opinion.

*REVERSED AND REMANDED.*