Kim M. FOX, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 96–3037.

United States Court of Appeals,
Federal Circuit.

Nov. 13, 1996.

Michael J. Kator, Kator, Scott & Heller, Washington, D.C., argued, for petitioner. On the brief was Irving Kator.

Laurel A. Loomis, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued, for respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Richard E. Rice, Assistant Director.

Before ARCHER, Chief Judge, MICHEL and RADER, Circuit Judges.

MICHEL, Circuit Judge.

Kim M. Fox appeals the September 8, 1995 decision of the Merit Systems Protection Board ("MSPB" or "Board") in Docket No. DC–0831–95–0520–I–1, affirming the reconsideration decision of the Office of Personnel Management ("OPM") denying Ms. Fox survivor annuity benefits as a former spouse under the Civil Service Retirement System ("CSRS"). The appeal was submitted for our decision following oral argument on August 2, 1996. Because the Administrative Judge ("AJ") erred in interpreting Clause 10 of the divorce settlement agreement between Mr. and Ms. Fox as not expressly providing for CSRS survivor benefits as required by the statute, we reverse.

## BACKGROUND

No facts are disputed. Petitioner Kim Fox married James Fox in 1965, while Mr. Fox was serving in the United States Navy. As a member of the Navy, Mr. Fox participated in the military's retirement system which allows military personnel to designate a beneficiary (or "survivor annuitant") to receive survivor benefits under the military's "Survivor Benefit Plan." Mr. Fox retired from military service on July 1, 1967, and he later designated Ms. Fox as the beneficiary under his Survivor Benefit Plan. Immediately following his retirement from military service, Mr. Fox became a civilian employee of the Department of the Navy. As a federal civilian employee, Mr. Fox participated in the CSRS, rather than the military retirement system. Pursuant to the CSRS, a civilian employee's designated beneficiary may qualify for payment of a "survivor annuity" upon the employee's death; the survivor annuity of the CSRS serves the same function as the Survivor Benefit Plan of the military system. While Mr. Fox was working as a civilian for the Navy Department, Kim Fox continued to be designated as a survivor annuitant under the military Survivor Benefit Plan and was also designated a survivor annuitant under the CSRS's survivor annuity plan.

Mr. Fox retired completely from federal service on May 1, 1984. At that time, he elected to waive his military retirement pay, opting instead to receive credit for his military service under the CSRS. Also upon his retirement, Mr. Fox again designated Kim Fox as a survivor annuitant under the CSRS.

On April 22, 1986, James and Kim Fox separated and executed a Property Settlement Agreement (the "Agreement"). The Agreement provided for, among other things, a division of personal property, a waiver of any right to "spousal support" (*i.e.*, alimony), and a clause which stated:

10. SURVIVORS [sic] BENEFIT PLAN. Husband shall keep wife covered under Survivors Benefit Plan.

Ms. Fox drafted the document; Mr. Fox was at the time practicing law and she was his secretary. They were divorced on April 22,

1986 by a decree of the Circuit Court of Fairfax County, Virginia. The decree approved the Agreement and incorporated it by reference.[1]

After Mr. Fox died on December 5, 1994, Kim Fox applied to the OPM for survivor benefits as a former spouse. On January 5, 1995, OPM issued an initial decision denying benefits to Kim Fox because "there was no court ordered survivor annuity for her." On January 31, 1995, Kim Fox filed for reconsideration; OPM denied this request, holding that the "Survivors Benefit Plan" in the Agreement "best describe[d] the benefits provided under the retired military coverage," and that 5 C.F.R. § 838.611(c) (1996) provides that a court order affecting military retirement pay cannot award a former spouse a portion of an employee annuity under the CSRS even where the military retirement pay has been waived for inclusion in CSRS annuities.

Kim Fox then filed a timely appeal of the reconsideration decision to the Board on May 10, 1995. In its initial decision dated September 8, 1995, the Board upheld the OPM's reconsideration decision. The AJ concluded that the "property settlement agreement did not expressly provide CSRS survivor benefits for [Ms. Fox]." The initial decision became final by operation of law on October 13, 1995, and this appeal timely followed.

## DISCUSSION

■ The Spouse Equity Act, codified at 5 U.S.C. § 8341(h) (1994), provides:

[A] former spouse of a deceased employee . . . is entitled to a survivor annuity under this subsection, if and to the extent expressly provided . . . in the terms of any decree of divorce or annulment or any court order or court-approved property settlement agreement incident to such decree.

The provision at issue here is Clause 10 of the Agreement, approved by the court and incorporated by reference into the divorce decree. Thus, we must determine whether Clause 10 entitles Kim Fox to CSRS survivor benefits as a former spouse. The Office of Personnel Management argues that the AJ did not err when he concluded Clause 10 of the Agreement does not expressly provide for Ms. Fox to receive such a CSRS survivor annuity; Ms. Fox argues that the document expressly provides that she is to receive a CSRS survivor annuity as a former spouse.

The MSPB, as the AJ acknowledged, has held that "magic words" in a divorce decree or settlement are not necessary to establish a former spouse's entitlement to collect a survivor annuity. See Nicholson v. Office of Personnel Management, 64 M.S.P.R. 340, 343 (1994) (court decree which stated that wife "reserves her survivor benefits in [her husband's] pension" while "waiv[ing] any marital interest claim in [his] current pension" sufficient to entitle wife to annuity); Thomas v. Office of Personnel Management, 46 M.S.P.R. 651, 654 (1991) (clause stating "Husband agrees to maintain all rights and benefits to which Wife is entitled and may realize in connection with his retirement and pension package" clearly and unambiguously referred to the husband's decision to provide a survivor annuity, despite lack of phrase "survivor annuity"). While no decisions of the Board bind us, we agree with the reasoning of these decisions and adopt the view that "magic words" are not necessary to entitle a former spouse to a survivor annuity under section 8341(h).

The requirement that the agreement or decree "expressly provide[ ] for" a survivor annuity reflects a congressional compromise. On the one hand, Congress was concerned about the protection of the financial interests of former spouses of deceased federal employees. See H.R.Rep. No. 98–1054, at 12 (1984), reprinted in 1984 U.S.C.C.A.N. 5540, 5542–43 ("Another major gap in existing law is the lack of survivor benefits for former spouses"); see also Thomas, 46 M.S.P.R. at 655 ("Congress enacted section 8341(h) as remedial legislation to close what it perceived to be a significant gap in the financial protection afforded former spouses of Federal re-

---

1. Mr. Fox married Tong W. Fox on May 16, 1987. He then elected a reduced annuity and designated his new wife, Tong, as the survivor beneficiary under the CSRS. Tong Fox was an intervenor in the appeal to the MSPB.

tirees."). On the other hand, Congress worried that OPM might construe state court dispositions contrary to their intended effect. *See Davenport v. Office of Personnel Management,* 62 F.3d 1384, 1387 (Fed.Cir.1995) ("The statute requires that the pertinent court order or property settlement 'expressly' provide for a survivor benefit, so as to ensure that OPM will not contrive a disposition that the state court did not contemplate."). Accordingly, when the terms of an agreement are ambiguous, the Board has denied an annuity to the surviving former spouse; for example, the Board has held the terms "pension benefits" or "death benefits" are fatally ambiguous as they may refer either to a lump sum payment or to survivor annuity payments. *See Holzman v. Office of Personnel Management,* 62 M.S.P.R. 254, 256–58 (1994), *aff'd,* 48 F.3d 1237 (Fed.Cir. 1995) (table); *Bottrell v. Office of Personnel Management,* 36 M.S.P.R. 338, 341 (1988), *aff'd,* 867 F.2d 1421 (Fed.Cir.1989) (table).

We hold that survivor annuity benefits are "expressly provided for" by the terms of Clause 10 of the Agreement. In using the term "Survivors Benefit Plan" in the Agreement, James and Kim Fox clearly intended to encompass the CSRS survivor annuity. By derivation, so did the Virginia state court.

First, the facts at the time the Agreement was drafted objectively support this interpretation and demonstrate that the term could, in fact, have only one meaning. There was only one plan under which Mr. Fox was entitled to benefits at the time of the Agreement—that of the Civil Service Retirement System. Second, as Mr. Fox and Kim Fox both knew, Mr. Fox had already waived his military benefits and, at the time the Agreement was signed, was entitled only to civil service benefits. Hence, they both knew her survivor benefit could only be pursuant to the CSRS. Indeed, the Civil Service Annuity Statement Mr. Fox received upon his retirement from civilian service in the Department of the Navy in 1984 listed Kim Fox as the designated survivor annuitant.[2] Had the Agreement assigned only the military Survi-

or Benefit Plan to Kim Fox, the assignation would have been a nullity both in fact and as Mr. and Ms. Fox understood it. Thus, both objectively and as a matter of the Foxes' subjective intent, the Agreement's term could not have referred to anything other than a survivor annuity under the CSRS.

The meaning of the term as used in Clause 10 is further made clear by other circumstances surrounding the drafting of the Agreement. *See generally Davenport,* 62 F.3d at 1387 (circumstances surrounding the drafting of relevant divorce decree order are relevant to interpretation of parties' intent in section 8341(h) case). Although Ms. Fox received property in the settlement from her husband, she waived all of her other marital claims to continuing spousal support or alimony; although not, by itself, dispositive, the fact is a further indication that Clause 10 of the Agreement had to refer to James Fox's CSRS rights, since it was intended to provide the sole means of support (if there was to be any) for her.

Third, the difference between the term which would have precisely named the civil service benefit—"survivor annuity"—is only slightly different than the term actually used in the Agreement—"Survivors Benefit Plan." Although the record indicates Mr. Fox was an attorney and perhaps should have known the precise term of art, Ms. Fox testified via her affidavit that she herself drafted the Agreement based upon her understanding of the relevant terms and upon "form books." Ms. Fox referred to the survivor annuity in the way familiar to her. That it mirrored Mr. Fox's now extinct military plan should not defeat her claim. Unless we attribute an intent to commit fraud to Mr. Fox or an intent to be self-defeating to Ms. Fox, there is only one possible meaning of the term in Clause 10 of the Agreement. Thus, we will not, in hindsight, hold these or other similarly situated drafters to any greater precision when there was only one possible referent for the clause at the time.

---

2. Mr. Fox was also already receiving the annuity, so there is also no ambiguity that the term might have referred to a lump-sum or other retirement payment. *Cf. Holzman,* 62 M.S.P.R. at 258 (find- ing ambiguity between types of available payments precluded holding that relevant document expressly provided for a survivor annuity).

We acknowledge that our review of decisions of the Board is greatly limited by statute. *See* 5 U.S.C. § 7703(c) (decision of Board must be affirmed unless (i) "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," (ii) in the absence of procedures "required by law, rule or regulation," or (iii) "unsupported by substantial evidence"); *Warren v. Department of Army*, 804 F.2d 654, 655–56 (Fed.Cir. 1986). We also recognize that neither we nor the Board is permitted by the terms of 5 U.S.C. § 8341(h) to rewrite or equitably reform state court divorce decrees or settlement agreements that do not unambiguously provide for a CSRS annuity; nor does the Board even have jurisdiction over such actions. *See Thomas*, 46 M.S.P.R. at 654 n. 3. We and the Board are further without authority to construe an ambiguous statement in a property settlement agreement to bend its plain meaning to award a sympathetic widower or widow survivor benefits where there was no "express provi[sion]" doing so. *See, e.g., Holzman*, 62 M.S.P.R. at 258 (multiple meanings of term create ambiguity so as not to expressly provide annuity). But that is not the case here. The Agreement contains an express survivor benefit provision which, read in light of all the circumstances surrounding its execution, clearly refers to a CSRS annuity, not a military one; there is no ambiguity. The contracting parties had the same, clear intention. The objective facts were equally clear. CSRS benefits were all there was.

The AJ, however, relying on *Summers v. Office of Personnel Management*, 46 M.S.P.R. 657 (1991), failed to give due account to the argument that the "prior decision by Mr. Fox to waive his military retired pay supports the proposition that he intended to provide [Kim Fox] with CSRS benefits in the [A]greement." Yet the holding in *Summers* rested on very different factual grounds. In *Summers,* the full Board reversed the decision of the AJ who had held that a surviving former spouse was entitled to survivor benefits. The Board concluded that "[t]he record shows that the ... divorce decree failed to state that the appellant was entitled to a survivor annuity and did not direct [the deceased government employee] to provide a former spouse annuity to the appellant." *Id.* at 659–60. Indeed, there was no annuity-related term to construe in that case. The document in *Summers* made no reference to either an annuity or a survivor benefit; it was only after the AJ examined extrinsic evidence unrelated to terms in the agreement that he found an intent to award the annuity. Accordingly, the AJ there was not authorized to rely on extrinsic evidence—namely, affidavits from attorneys and a letter written by the deceased employee to OPM—to award a survivor annuity. *Id.*

Here, by contrast, the document itself expressly mentions a "survivors benefit plan" and, when the Agreement is read in light of all the circumstances surrounding its execution, it is clear exactly what those survivor benefits must have been—a CSRS survivor annuity. There is no bar to the use of extrinsic evidence to interpret the meaning of a term that is found in a divorce decree or settlement agreement. The bar arises only when extrinsic evidence is used to justify reading a term into an agreement that is not found there. Here, a term was merely interpreted, not read in.

*Summers,* in short, concerned the nonexistence of an operative term concerning survivor benefits, not as here a term directly related to survivor benefits and a question of which survivor benefit plan the term referred to—military or civilian. A closer analogy would have been *Thomas,* 46 M.S.P.R. at 654, or *Nicholson,* 64 M.S.P.R. at 343. In *Thomas,* the term was "survivor benefits" in her spouse's "pension." Here, the term was "Survivors Benefit Plan." In both *Nicholson* and the present case, the wife waived all marital claims to any pension-related benefits. As this was a decisive factor in *Nicholson,* it should likewise have been decisive here. The AJ here simply relied on the wrong precedent, failing to acknowledge the factual similarity of this case to *Thomas* and *Nicholson.*

Thus, we hold that "magic words" are not required to assign a CSRS survivor annuity in favor of a former spouse and that in interpreting "the terms of any decree of divorce or annulment or any court order or

**146**

court-approved property settlement agreement incident to such decree" that contains a clause which could fairly be read as awarding a CSRS survivor annuity, the judge must examine [3] any evidence introduced concerning the marriage parties' intent and the circumstances surrounding the execution of the document.[4] If such evidence dictates only one possible meaning for such a term—that it refers to a CSRS survivor annuity—then it is legal error to conclude that the document has not "expressly provided for" the award of a survivor annuity. However, if the document contains no pertinent clause, or if it does but the operative term in the clause cannot fairly be read as awarding a CSRS annuity, or if it can be so read but the facts and circumstances surrounding the execution do not clearly dictate the above conclusion, it is error to conclude that the document contains the statutorily required express provision for a CSRS survivor annuity for a former spouse. Moreover, if the document contains no term that could fairly be read to contemplate such a

CSRS annuity, then it is legally impermissible even to admit extrinsic evidence to demonstrate an intent and effective expression to award such an annuity.

Here, the Agreement contains a term referring to survivor benefits—"Survivors Benefit Plan"—and the extrinsic evidence clearly establishes that the term could *only* refer to a CSRS survivor annuity and not military or lump sum benefits. The AJ therefore erred at law when he concluded that the Agreement had not "expressly provided for" a former spouse survivor annuity under the CSRS. The decision of the Board must therefore be reversed.

*REVERSED.*

3. Of course, if the meaning of the applicable clause is perfectly clear and the plain meaning of the operative term grants a CSRS annuity, that is the end of the inquiry and the annuity must be awarded to the former spouse. Thus, for example, if a divorce agreement or decree reads, "Husband grants wife his CSRS survivor annuity," or, "Husband grants wife a survivor annuity in accordance with 5 U.S.C. § 8341(h)," then, regardless of extrinsic evidence or the absence thereof, the annuity must be awarded. Here, however, because the clause is not that clear, it is proper to examine extrinsic evidence.

4. A term which, on its face, appears to refer to something inconsistent with a CSRS survivor

annuity cannot be said to be fairly read as granting such an annuity. Thus, use of terms like "lump sum death benefit" or "military pension" cannot be considered sufficient to proceed to examine evidence of the marriage parties' intent and the surrounding circumstances. In such an event, resort to extrinsic evidence would be unwarranted. Here, however, the term "Survivors Benefit Plan" was not inconsistent with a CSRS survivor annuity.