# United States Court of Appeals for the Federal Circuit

04-3397

MARY WARREN,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Michael J. Kator, Kator, Parks & Weiser, of Washington, DC, argued for petitioner. On the brief was Clark B. Williams, Heltzel, Upjohn, Williams, Yandell, Roth, Smith & Petersen, P.C., of Salem, Oregon.

Kevin B. Crawford, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Robert E. Kirschman, Jr., Assistant Director, and James D. Colt, Trial Attorney.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3397

MARY WARREN,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED: May 16, 2005

_____

Before LOURIE, BRYSON, and GAJARSA, Circuit Judges.

BRYSON, Circuit Judge.

Mary Warren appeals from an order of the Merit Systems Protection Board, Docket No. SE-0831-03-0055-I-1, affirming a decision of the Office of Personnel Management ("OPM"), which denied her request for a survivor annuity under the Civil Service Retirement System ("CSRS"). We uphold the Board's decision to the extent that it sustained OPM's ruling that Ms. Warren is not entitled to a survivor annuity based on the two court orders entered in connection with her divorce from Richard Pike, a retired federal employee. However, the parties agree that OPM did not provide Mr. Pike with the requisite notice of his right to make a post-divorce election of a survivor annuity for Ms. Warren. For that reason, we remand this case to the Board for further proceedings to determine whether Mr. Pike wishes to elect, or has already taken steps

that constitute a valid election, to provide a survivor annuity for Ms. Warren in the event Mr. Pike should predecease her.

I

Ms. Warren and Mr. Pike were married on November 10, 1965. During their marriage, Mr. Pike worked for the U.S. Department of Agriculture until he retired on April 30, 1994. Upon his retirement, Mr. Pike elected to a receive a reduced lifetime annuity in order to provide for a maximum survivor annuity for his spouse. Ms. Warren and Mr. Pike were subsequently divorced. In connection with their divorce, they entered into a settlement agreement dated December 1, 1997.

The settlement agreement provided that Ms. Warren would receive the following portion of Mr. Pike's benefits:

> One-half (1/2) of any entitlement which results [from] monies to be paid under the terms and conditions of the Respondent's Pension Plan from the U.S.D.A., which plan is more particularly described in the Qualified Domestic Relations Order in this [case] which applies to vested sums which are accumulated or vested as of the date of this de[c]ree.

The Qualified Domestic Relations Order issued by the District Court of Angelina County, Texas (the "1997 QDRO"), which was entered pursuant to the settlement agreement, provided that Ms. Warren would receive "Fifty Percent (50%) of benefits available on the date of divorce." The 1997 QDRO also provided that "50% of the marital portion of the vested and accrued benefit rights was assigned and transferred" to Ms. Warren on the date of the divorce. The 1997 QDRO did not explicitly refer to a survivor annuity or any other survivor benefits for Ms. Warren.

OPM found the 1997 QDRO to be unacceptable for processing because it "contains language that is unacceptable under section 838.302 of Title 5 of the Code of

Federal Regulations." In particular, in a letter to Mr. Pike, OPM explained that the 1997 QDRO did not contain "the reference required for such orders under section 838.302(a)(2) of Title 5 of the Code of Federal Regulations," which requires the QDRO to refer to part 838 of title 5 of the Code of Federal Regulations and to state that the provisions of the order concerning CSRS benefits are drafted in accordance with the terminology used in that part. 5 C.F.R. § 838.302(a)(2). After OPM sent that letter to Mr. Pike, the Angelina County District Court issued a second QDRO on August 3, 1999 (the "1999 QDRO"). The 1999 QDRO contained the language necessary to satisfy section 838.302(a)(2) of the OPM regulations. In response to the submission of that QDRO, OPM awarded Ms. Warren a one-half share of Mr. Pike's lifetime annuity.

With respect to the issue of Ms. Warren's eligibility for a survivor annuity, the 1999 QDRO purported to grant Ms. Warren "the maximum possible former spouse survivor annuity under CSRS," and it further provided that the cost of the annuity "shall be paid for [sic] the Retiree's annuity and not from the Former Spouse's share of the Retiree annuity." OPM, however, ruled that Ms. Warren was not entitled to any survivor annuity because the survivor annuity "was not awarded in the first order [the 1997 QDRO] that divided property between you and Mr. Pike." In so ruling, OPM referred to 5 U.S.C. § 8341(h), which governs the eligibility of a former spouse of a deceased employee to a survivor annuity. That statute provides that a former spouse is entitled to a survivor annuity "if and to the extent expressly provided for in an election under [5 U.S.C. § 8339(j)(3), which permits an employee to elect a survivor annuity for a former spouse following a divorce], or in the terms of any decree of divorce or annulment or any court order or court-ordered property settlement agreement incident to such

04-3397                                3

decree." 5 U.S.C. § 8341(h)(1). The statute further provides that a modification in such a decree, order, or agreement is not effective if it is made after the retirement or death of the employee and to the extent that the modification involves an annuity. Id. § 8341(h)(4). Because the 1999 QDRO constituted a modification of the original 1997 QDRO and involved an annuity, OPM ruled that the statute rendered the 1999 QDRO ineffective to grant Ms. Warren a survivor annuity.

Ms. Warren appealed OPM's decision to the Merit Systems Protection Board, which affirmed OPM's determination. The administrative judge who was assigned to the case found that the 1997 QDRO did not award Ms. Warren a survivor annuity and that Ms. Warren therefore "has not established her eligibility for a former spouse survivor annuity under the CSRS." Ms. Warren appealed the administrative judge's decision to the full Board, which denied Ms. Warren's petition for review. Ms. Warren then petitioned for review by this court.

II

A

The divorced spouse of a retired federal employee is entitled to a survivor annuity if the employee has elected a survivor annuity under 5 U.S.C. § 8339(j)(3), or a survivor annuity has been provided for in a divorce decree or a court order or court-approved property settlement agreement issued in connection with the divorce decree. Id. § 8341(h)(1). The statute requires that the right to a survivor annuity be "expressly provided for" in the election or in the court order or court-approved settlement agreement. Id.; see Vaccaro v. Office of Pers. Mgmt., 122 F.3d 1280, 1284-85 (Fed. Cir. 2001) (stating that "a former spouse is not eligible for a survivor annuity unless the

annuity is 'expressly provided for'"), citing <u>Hokanson v. Office of Pers. Mgmt.</u>, 122 F.3d 1043, 1044 (Fed. Cir. 1997). However, this court has held that "magic words" are not required to assign a CSRS survivor annuity in favor of a former spouse. <u>Fox v. Office of Pers. Mgmt.</u>, 100 F.3d 141, 145-46 (Fed. Cir. 1996). A court order or settlement agreement is sufficient if it "contains a clause which could fairly be read as awarding a CSRS survivor annuity" and if the evidence of the parties' intent and the circumstances surrounding the execution of the document "dictate only one possible meaning" for the clause—"that it refers to a CSRS survivor annuity." <u>Id.</u> at 146.

Although Mr. Pike elected a survivor annuity for his wife at the time of his retirement and before they were divorced, the pre-divorce election is not effective to provide her with a right to a survivor annuity following the divorce, <u>see</u> 5 U.S.C. § 8339(j)(5)(A)(ii), and she does not argue that it is. Instead, she argues that the 1997 QDRO "expressly provided for" a survivor annuity and that OPM erred when it ruled that the 1997 QDRO was ineffective to grant her that annuity. Specifically, she argues that although the 1997 QDRO did not use the specific term "survivor annuity," the language of that document was nonetheless sufficiently broad to include a survivor annuity as a matter of law.

We disagree. The 1997 QDRO merely provided that Ms. Warren would receive "Fifty Percent (50%) of benefits available on the date of divorce." At the time of the divorce, Mr. Pike's survivor annuity was not one of the "benefits available," because a survivor annuity would not become available for collection until Mr. Pike's death and then only if Ms. Warren survived him. Moreover, the reference to "Fifty Percent" of the

benefits available has no sensible application to a survivor annuity, which by its nature is not shared between the retiree and the survivor.

Ms. Warren makes the further argument that the language in the 1997 QDRO providing that Ms. Warren would receive "50% of the marital portion of the vested sums which are accumulated or vested as of the date of this de[c]ree" was sufficient to constitute an express grant of a survivor annuity, because her right to a survivor annuity had already vested as of the time of the divorce. That argument fails not only because the language falls far short of an "express" reference to a survivor annuity, but also because, once again, it makes no sense to describe a survivor annuity as "50% of the marital portion," since a survivor annuity is an undivided, conditional interest that is received only by the surviving spouse, and would not naturally be described as a "marital portion." Thus, we agree with the Board that the 1997 QDRO "was meant to divide the CSRS [lifetime] annuity that Mr. Pike was receiving at the time of the divorce by giving one-half to appellant and one-half to Mr. Pike" and that "[t]here is no other reasonable interpretation in view of the split."

Ms. Warren further contends that extrinsic evidence demonstrates that the broad language in the 1997 QDRO refers to a CSRS survivor annuity, and she argues that the Board should have looked to that extrinsic evidence in light of this court's decision in Fox v. Office of Personnel Management, 100 F.3d 141 (Fed. Cir. 1996). In Fox, however, the divorce decree at issue expressly mentioned a "survivor benefits plan," and extrinsic evidence was permitted to demonstrate "exactly what those survivor benefits must have been—a CSRS survivor annuity." Id. at 145. In this case, by contrast, there was no such express reference to "survivor benefits" in the 1997 QDRO.

To permit the introduction of extrinsic evidence of the parties' intentions in this case would be to depart entirely from the regulatory requirement that the QDRO "expressly refer" to the provision of the regulations governing survivor annuities. <u>Fox</u> itself expressly stated that extrinsic evidence may not be used "to justify reading a term into an agreement that is not found there." <u>Id.</u>

B

Ms. Warren contends, in the alternative, that the 1997 QDRO was acceptable for processing even though the order did not refer to part 838 of Title 5, as required by 5 C.F.R. § 838.302(a)(2), because the only retirement plan in issue at the time of divorce was a CSRS plan, and because Mr. Pike and Ms. Warren drafted the decree without assistance from an attorney. Ms. Warren further argues that even if the 1997 QDRO was not acceptable for processing with respect to that procedural language, the 1999 QDRO was submitted to the court only to make the order acceptable to OPM, and that because the 1999 QDRO contained no other modifications, the statement that Ms. Warren would receive the "maximum possible former spouse survivor annuity" was merely a restatement of what the 1997 QDRO had already intended to award.

We reject both of Ms. Warren's arguments. The 1997 QDRO plainly lacked the requisite procedural language or its equivalent, and it was therefore not improper for OPM to rule that the order did not satisfy the statutory and regulatory prerequisites for creating the right to a survivor annuity. There was nothing in the 1997 QDRO that can be regarded as a reference, either express or implicit, to a survivor annuity, and thus there was nothing in that order that can form the basis for concluding that the parties expressly, albeit clumsily, included a survivor annuity among the benefits that were

addressed by that order. Again, the <u>Fox</u> case, in which the divorce decree referred to the "survivor benefit plan," stands in stark contrast to this case, in which the 1997 QDRO contained no express or implicit reference to survivor benefits, a survivor annuity, or a survivor benefit plan.

We also agree with the Board that OPM properly refused to treat the reference to the survivor annuity in the 1999 QDRO as simply a clarification or a restatement of equivalent language in the 1997 QDRO. As noted above, section 8341(h)(4) provides that a modification in a divorce decree or court-approved property settlement is not effective if it is made after the employee's retirement or death and involves an annuity. The OPM regulations make the same point quite explicitly. <u>See</u> 5 C.F.R. § 838.806(a) (stating that "[a] court order awarding a former spouse survivor annuity is not a court order acceptable for processing if it is issued after the date of retirement or death of the employee and modifies or replaces the first order dividing the marital property of the employee or retiree and the former spouse."). The regulations also state that "[f]or purposes of awarding a former spouse survivor annuity . . . the court order must be . . . [t]he first order dividing the marital property of the retiree and the former spouse." <u>Id.</u> § 838.806(b). Moreover, the regulations make clear that the first order does not include "(i) Any court order that amends, explains, clarifies, or interprets the original written order regardless of the effective date of the court order . . . or (ii) Any court order issued under reserved jurisdiction or any other court order issued subsequent to the original written order that divides any marital property regardless of the effective date of the order." <u>Id.</u> § 838.806(f)(2). The 1997 QDRO was the first order dividing marital

property, and because that order failed expressly to provide for a survivor annuity, the 1999 QDRO cannot be viewed as simply a restatement of the right to a survivor annuity.

This case is quite similar to Hokanson v. Office of Personnel Management, 122 F.3d 1043 (Fed. Cir. 1997), in several respects. First, the court in Hokanson concluded that references to "civil service retirement benefits" and "employee retirement benefits" are insufficient to "expressly provide[ ] for" a survivor annuity. Id. at 1045-46. That conclusion is fatal to Ms. Warren's contention that the reference in the 1997 QDRO to "the vested and accrued benefits" is sufficient to "expressly provide[ ] for" such an annuity. Second, the Hokanson court's ruling that the subsequent modification of the decree was legally ineffective is directly applicable here. See id. at 1047. That ruling is squarely contrary to Ms. Warren's contention that the 1999 QDRO can be viewed as a legally effective clarification of the 1997 QDRO. Thus, we cannot accept Ms. Warren's arguments with respect to either of those issues without running afoul of Hokanson. Accordingly, we agree with the Board that under the standards applied by this court, the 1997 QDRO did not expressly provide for a survivor annuity for Ms. Warren, and that the 1999 QDRO constituted a modification of the 1997 QDRO and does not qualify as a court order granting a survivor annuity.

We therefore uphold the Board's determination that Ms. Warren did not receive any survivor annuity rights through either the 1997 QDRO or the 1999 QDRO. Nevertheless, we cannot affirm the Board's decision that Ms. Warren should receive no survivor benefits because, as the government acknowledges, OPM failed to provide Mr. Pike with sufficient notice regarding the option of electing to reinstate a survivor annuity for his former spouse after the divorce. We turn now to that issue.

III

By law, Ms. Warren's prior right to a survivor annuity, which Mr. Pike elected at the time of his retirement, terminated upon the couple's divorce. <u>See</u> 5 U.S.C. § 8339(j)(5)(A); <u>Holder v. Office of Pers. Mgmt.</u>, 47 F.3d 412, 415 (Fed. Cir. 1995). At that point, Mr. Pike had two methods of providing a survivor annuity for Ms. Warren. As an alternative to using a court order issued in connection with the divorce to reinstate a survivor annuity for Ms. Warren, Mr. Pike had the option of making an election "at the time of retirement or, if later, within 2 years after the date on which the marriage of the former spouse to the employee or Member is dissolved . . . ." <u>Id.</u> § 8339(j)(2). In light of that option, OPM had an obligation to provide notice to Mr. Pike "stat[ing] that a pre-divorce election automatically terminates upon divorce and that an annuitant must make a new election to provide a survivor annuity for a former spouse." <u>Simpson v. Office of Pers. Mgmt.</u>, 347 F.3d 1361, 1365 (Fed. Cir. 2003). In the absence of proper notice of the right to a post-divorce election, the two-year statute of limitations for such an election is not applicable. <u>See</u> <u>id.</u> at 1366-67.

Both parties agree that OPM failed to provide Mr. Pike with proper notice of his right, following his divorce, to elect a survivor annuity for Ms. Warren. The parties disagree, however, as to the consequence of that failure. Ms. Warren contends that this court should order OPM to award Ms. Warren a former spouse survivor annuity, given that "Mr. Pike's intent to provide for a survivor annuity is clear." She relies on four cases in which the court directed the award of survivor annuities to former spouses after the death of the retirees on the ground that it was clear that the retirees would have intended to make survivor annuity elections: <u>Hairston v. Office of Personnel</u>

Management, 318 F.3d 1127, 1130 (Fed. Cir. 2003); Wood v. Office of Personnel Management, 241 F.3d 1364, 1368 (Fed. Cir. 2001); Vallee v. Office of Personnel Management, 58 F.3d 613, 616 (Fed. Cir. 1995); and Brush v. Office of Personnel Management, 982 F.2d 1554, 1559 (Fed. Cir. 1992). The government argues, however, that a remand is appropriate because, unlike the situation in those four cases, Mr. Pike is still alive and able to decide now whether to elect a survivor annuity for Ms. Warren.

We agree with the government. The court in this case need not attempt to determine what Mr. Pike's intentions would be, given that he is still alive and presumably capable of making that determination himself. Moreover, there is some reason for doubt as to Mr. Pike's intentions with respect to the survivor annuity issue. While Ms. Warren asserts that Mr. Pike clearly wanted Ms. Warren to have a survivor annuity, the record is not so clear. For example, the record includes an e-mail message purportedly from Mr. Pike in which he stated, "I certainly do not mind having you get survivor benefits," but added that "I really do not think it fair that I pay any of the survivor deduction." Accordingly, we conclude that the proper course is to remand the case to the Board to provide Mr. Pike an opportunity to determine whether to elect a survivor annuity for Ms. Warren pursuant to 5 U.S.C. § 8339(j)(2).

At oral argument, Ms. Warren advanced the argument that the 1999 QDRO should be treated as an election, made within the two-year time limitation under 5 U.S.C. § 8339(j), and that this court should rule that Ms. Warren is entitled to a survivor annuity based on that election. We decline to address the question whether the 1999 QDRO is adequate to serve as an election, for two reasons. First, Ms. Warren did not raise that argument in her brief, but only at oral argument, where she was represented

by new counsel. Second, the issue presents factual questions that we are not in a position to resolve. For example, the government pointed out at oral argument that the 1999 QDRO was not signed by Mr. Pike, and it is therefore not entirely clear that Mr. Pike authorized the entry of that order. In addition, it is not clear whether Mr. Pike has remarried, or had remarried at the time of the 1999 QDRO. If he has remarried, he would need to obtain his current spouse's approval in order to provide survivor annuity to Ms. Warren pursuant to 5 C.F.R. § 831.632, and if he had remarried by the time of the 1999 QDRO, that QDRO would not be effective as an election in favor of Ms. Warren because of the absence of evidence of his new spouse's agreement. Of course, if Mr. Pike elects on remand to provide a survivor annuity for Ms. Warren, this issue would be moot. But in the event that Mr. Pike chooses not to elect a survivor annuity for Mr. Warren, the Board can address and decide that issue based on the necessary factual background.

Each party shall bear its own costs for this appeal.

<u>VACATED and REMANDED</u>.