NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MELISSA M. WILLIAMS,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2023-1233

---

Petition for review of the Merit Systems Protection Board in No. AT-0831-22-0396-I-1.

---

Decided:  May 21, 2025

---

JOHN J. TORIKASHVILI, Law Office of John J. Torikashvili, PA, Aventura, FL, argued for petitioner.

ANNE DELMARE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by REGINALD THOMAS BLADES, JR., PATRICIA M. MCCARTHY, YAAKOV ROTH.

---

Before MOORE, *Chief Judge*, CLEVENGER and CHEN, *Circuit Judges*.

CLEVENGER, *Circuit Judge*.

Ms. Melissa Williams seeks to overturn the final decision of the Merit Systems Protection Board ("Board") which upheld the United States Office of Personnel Management's ("OPM") decision to deny Ms. Williams survivor annuity benefits purportedly awarded to her by her deceased former husband, Mr. Haywood Nichols. *Williams v. Off. of Pers. Mgmt.*, No. AT-0831-22-0396-I-1 (M.S.P.B. Aug. 29, 2022) ("*Final Order*").[1]  For the following reasons, we reverse the Board's final decision and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

After being married in 1978 and later divorced, Ms. Williams and Mr. Nichols remarried in 1987. Mr. Nichols retired from federal service in 1989, while he and Ms. Williams were married, and as part of his retirement, Mr. Nichols elected a survivor annuity for Ms. Williams.

Ms. Williams and Mr. Nichols divorced a second time on June 28, 2006. As part of the divorce process, the two participated in mediation that resulted in a Marital Settlement Agreement ("MSA"). *See* SAppx49–56.[2]  The MSA stated, in relevant part: "the husband acknowledges that there are Survivor Benefits in the favor of the wife from his pension plan. The husband agrees that he will not change

---

[1]    The Board's initial decision became the Board's final order when neither party filed a petition for review or petition to vacate the decision within 35 days after issuance. *See* 5 C.F.R. § 1201.113.

[2]    "SAppx" refers to the supplemental appendix attached to Respondent's Response Brief.

this provision." SAppx49–50. The Final Judgment of Dissolution of Marriage, ordered by the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, on June 28, 2006 ("first court order"), "ratified and made part of this final judgment" the MSA. SAppx47–48. On July 28, 2006, Mr. Nichols notified OPM of his divorce and requested termination of the survivor annuity benefit for Ms. Williams. SAppx2.

Unaware of Mr. Nichols' July 28, 2006 notification to OPM, Ms. Williams submitted the first court order to OPM seeking acknowledgment of her future right to a survivor annuity benefit. In its January 27, 2009 response, OPM informed her that the first court order was "unacceptable for Federal survivor annuity benefit processing" because "[t]his court order does not use terms that are sufficient to identify this retirement system as explained in section 838.911 of Title 5 of the Code of Federal Regulations." SAppx43. OPM also sent letters to Ms. Williams on August 18, 2009, and February 3, 2010, again stating that she was not eligible to receive a former spouse survivor annuity and further adding that it "stopped the reduction in Mr. Nichols' annuity that provides for a survivor benefit effective the first day of the month following [the] divorce." SAppx41–42.

In light of OPM's letters, Ms. Williams returned to the state court which entered the first court order, and on July 1, 2010, that court issued a Court Order Acceptable for Processing ("second court order"), which specifically awarded Ms. Williams a "former spouse survivor annuity under the Civil Service Retirement System." SAppx44–46. After reviewing the second court order, OPM sent Ms. Williams a letter on September 11, 2010, informing her that it "intend[ed] to honor the . . . former spouse's survivor annuity award." SAppx39. However, less than a month later, on October 7, 2010, in an about-face, OPM stated that it could not honor the "court order" because it did "not use terms that are sufficient to identify [the] retirement system" and

because the "court order [did] not expressly award a former spouse survivor annuity." SAppx37.

Despite OPM's earlier rejections, following Mr. Nichols' death on February 3, 2019, Ms. Williams applied for survivor annuity benefits. In contravention of its statements within its 2009 and 2010 letters, OPM provided Ms. Williams survivor annuity benefits from February 4, 2019, through September 30, 2020. However, OPM stopped the payments on October 26, 2020, and sent a letter to Ms. Williams on February 2, 2022, informing her she would need to repay OPM the $31,361.47 in survivor annuity benefits "erroneously paid" to her. SAppx35–36.

Ms. Williams sought reconsideration of OPM's February 2, 2022 initial decision, and in its reconsideration decision, OPM found "that applicable laws and regulations [were] correctly applied" and Ms. Williams was "not eligible to receive a former spouse survivor annuity." SAppx33. OPM added that "[w]hile [it] sympathize[s] with the circumstances" in Ms. Williams' case, "the law is specific on this point, and [OPM] [has] no administrative discretion in this matter." *Id.*

Ms. Williams timely appealed to the Board but she did not seek a waiver of the overpayment. Rather, she argued that an overpayment did not exist because she was entitled to a survivor annuity benefit.

The Board affirmed OPM's reconsideration decision. The Board found that the language used in the first court order was "not sufficient to award [Ms. Williams] a survivor annuity as it does not specifically identify the pension plan, using words such as 'FERS,' 'CSRS,' OPM, or 'Federal Government.'" *Final Order* at 6. Because the first court order did not use these words, it was "not a 'court order acceptable for processing' under the applicable regulations." *Id.* Turning to the second court order, the Board found that it was unenforceable under OPM regulations as it modified the first court order but was issued after the

date of Mr. Nichols' retirement.  *Id.*  The Board acknowledged that Ms. Williams "bargained for and gave up certain things, including alimony," to secure the survivor benefits annuity.  *Id.* at 7.  However, the Board concluded it was "without authority" to award survivor annuity benefits because Ms. Williams had failed to "strictly meet the statutory and regulatory criteria governing the benefits she [sought]."  *Id.*

Ms. Williams timely appealed to this court.  We have jurisdiction to review the Board's decision under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### I

A "former spouse of a deceased [federal] employee . . . is entitled to a survivor annuity . . . if and to the extent expressly provided for . . . in the terms of any decree of divorce."  5 U.S.C. § 8341(h)(1).  Further, a "modification" to a divorce decree "shall not be effective" "if such modification is made after the retirement or death of the employee" and "to the extent that such modification involves an annuity."  *Id.* § 8341(h)(4).

OPM's regulations state that a "court order awarding a former spouse survivor annuity" is acceptable only if "it expressly awards a former spouse survivor annuity."  5 C.F.R. 838.804(a).  In order to "expressly award" a survivor annuity, the court order must first "[i]dentify the retirement system using terms that are sufficient to identify the retirement system as explained in [5 C.F.R.] § 838.911; and [e]xpressly state that the former spouse is entitled to a former spouse survivor annuity using terms that are sufficient to identify the survivor annuity as explained in [5 C.F.R.] § 838.912."  *Id.* §§ 838.804(b)(1)–(2).

5 C.F.R. § 838.911(a) specifies that a court order "identif[ies] the retirement system affected," and thus satisfies the requirements of § 838.804(b)(1), by using language that

includes "[f]or example, 'CSRS,' 'FERS,' 'OPM,' or 'Federal Government' survivor benefits."    The requirements of § 838.804(b)(1) can alternatively be met with a "court order that requires an employee or retiree to maintain survivor benefits covering the former spouse . . . if the former spouse was covered by a CSRS or FERS survivor annuity . . . at the time of the divorce."  *Id.* § 838.911(d).

5 C.F.R. § 838.912 specifies that a court order "award[s] a former spouse survivor annuity" in accordance with § 838.804(b)(2) if it uses terms "such as 'survivor annuity,' 'death benefits,' [or] 'former spouse survivor annuity under 5 U.S.C. 8341(h)(1).'"  *Id.* § 838.912(a).  The requirements of § 838.804(b)(2) can also be satisfied with a "court order that requires an employee or retiree to maintain survivor benefits covering the former spouse . . . if the former spouse was covered by a CSRS or FERS survivor annuity . . . at the time of the divorce."  *Id.* § 838.912(b)(2).

## II

In upholding OPM's denial of Ms. Williams' survivor annuity benefits, the Board examined the requirements of 5 C.F.R. § 838.911 and nothing more to find that the first court order did not "specifically identify the pension plan, using words such as 'FERS,' 'CSRS,' OPM, or 'Federal Government.'"  *Final Order* at 6.  Therefore, according to the Board, "the first court order [was] insufficient to award a survivor annuity benefit because its language [did] not specifically identify the retirement system to which the survivor annuity refers, as required by OPM's regulations."  *Id.*

We set aside a Board's decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c).

Ms. Williams argues that this court should set aside the Board's decision because it failed to apply and analyze the three-part framework this court articulated in *Downing v. Off. of Pers. Mgmt.*, 619 F.3d 1374 (Fed. Cir. 2010). *See* Oral Arg. at 3:26–4:45, 6:27–6:40, *Williams v. Off. of Pers. Mgmt.*, No. 2023-1233 (Fed. Cir. May 5, 2025), https://oralarguments.cafc.uscourts.gov/default.aspx?fl= 23-1233_05052025.mp3 (hereinafter "Oral Arg."). According to Ms. Williams, because the MSA used the term "Survivor Benefits," Mr. Nichols "explicitly intended to award" Ms. Williams "survivor annuity benefits," thus obligating the Board to analyze whether the first court order satisfied the three-part framework even if the order failed to use words specified in the OPM regulations.[3] Pet'r's Opening Br. 11; *see also* Oral Arg. 5:19–6:20.

This court has repeatedly held that "'magic words' are not required to assign a CSRS survivor annuity in favor of a former spouse," and that failure in a court order to provide specific identification of a survivor annuity plan with words such as FERS, CSRS, and the like is not fatal to an award of survivor benefits. *Fox v. Off. of Pers. Mgmt.*, 100 F.3d 141, 145–46 (Fed. Cir. 1996). When a court order purportedly awarding survivor annuity benefits does not contain "any magic words," *Fox* "set[s] forth the framework for analyzing whether" such a court order "provides the survivor annuity benefit under [5 U.S.C.] § 8341(h)(1)." *Downing*, 619 F.3d at 1377. Under the *Fox*/*Downing* framework, a "court must first determine whether the order contains a pertinent clause regarding a survivor annuity; second, if such a clause exists, the court 'must inquire whether the operative terms in that clause can fairly be read as

---

[3]    Ms. Williams does not challenge the Board's decision that, under OPM regulations, the second court order cannot be enforced because it was a modification to a divorce decree that occurred after Mr. Nichols retired.

awarding the annuity'; and third, if it does, the court must 'examine any evidence introduced concerning the marriage parties' intent and the circumstances surrounding the execution of the document to interpret the clause.'" *Id.* (citing *Hayward v. Off. of Pers. Mgmt.*, 578 F.3d 1337, 1345 (Fed. Cir. 2009) and *Fox*, 100 F.3d at 146).

Instead of applying the *Fox/Downing* three-part framework, the Board seemingly engaged in a search for "magic words." The Board's examination of the first court order limited itself to looking only for words similar to those listed in 5 C.F.R. § 838.911. This was clear legal error.

Our cases hold that a divorce decree which simply mentions the award of "Survivor Benefits" is sufficient to trigger an analysis under the *Fox/Downing* three-part framework. *See Fox*, 100 F.3d at 142–45 (holding that "[i]n using the term 'Survivors Benefit Plan' . . . [the divorced parties] clearly intended to encompass the CSRS survivor annuity" and further examining the "circumstances surrounding" the divorce decree in accordance with the three-part framework); *Snyder v. Off. of Pers. Mgmt.*, 463 F.3d 1338, 1340–43 (Fed. Cir. 2006) (holding that a section of the divorce decree relating to "*OTHER SURVIVOR BENEFITS*" which discussed "Pre-retirement Survivor benefits" could "fairly be read as providing a post-retirement survivor annuity," thus requiring "the Board . . . to examine evidence . . . to determine whether it dictates another possible meaning for the clause"); *Hayward*, 578 F.3d at 1340, 1346 (holding that a divorce decree that stated "Survivor Benefit Plan," without identifying the specific plan, could "fairly be read as awarding a CSRS annuity" after analyzing the other circumstances of the divorce in accordance with the three-part framework). *Cf. Warren v. Off. of Pers. Mgmt.*, 407 F.3d 1309, 1314 (Fed. Cir. 2005) (holding that the three-part framework was not applicable to a divorce decree that did not mention survivor benefits and that referenced benefits that had "no sensible application to a survivor annuity").

In Ms. Williams' case, the MSA states: "The husband acknowledges that there are *Survivor Benefits* in favor of the wife from his pension plan." SAppx49 (emphasis added). The mention of "Survivor Benefits" is similar to language in other divorce decrees where we have required analysis under the *Fox/Downing* three-part framework. *See Fox*, 100 F.3d at 142, 145 ("Survivors Benefit Plan"); *Snyder*, 463 F.3d at 1339–40, 1343 (*"SURVIVOR BENEFITS"* and "Pre-retirement Survivor benefits"); and *Hayward*, 578 F.3d at 1346–47 ("Survivor Benefit Plan"). Our cases demonstrate that the first court order's use of the term "Survivor Benefits" is a "pertinent clause regarding survivor annuity" that required the Board to engage in the other parts of the *Fox/Downing* three-part framework. *See Downing*, 619 F.3d at 1377. Because the Board did not analyze the first court order under the *Fox/Downing* three-part framework, we must set aside the Board's decision.[4]

## CONCLUSION

For the reasons explained above, we reverse the Board's ruling that Ms. Williams was not entitled to survivor annuity benefits and remand for the Board to judge Ms. Williams' survivor annuity benefits under the three-part framework articulated in *Fox/Downing*.

---

[4]    We note that Ms. Williams may also be entitled to survivor annuity benefits under the provisions of 5 C.F.R. §§ 838.911(d), 838.912(b)(2), because the first court order, incorporating the MSA, specified that Mr. Nichols "[would] not change," i.e., would maintain, Ms. Williams' survivor annuity benefits. Because we generally do not consider issues not decided below, we leave it to the parties and the Board on remand to determine if these regulations provide an alternative basis under which Ms. Williams is entitled to the survivor annuity benefits. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

## REVERSED AND REMANDED

Costs

No costs.