# United States Court of Appeals for the Federal Circuit

2008-3308

LINDA L. HAYWARD,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Barbara J. Shah, Shah Law Group, P.C., of Bethel Park, Pennsylvania, argued for petitioner.

L. Misha Preheim, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Michael F. Hertz, Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3308

LINDA L. HAYWARD,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for Review of the Merit Systems Protection Board in PH0831070512-I-1.

_____

DECIDED:  August 24, 2009

_____

Before SCHALL, GAJARSA, and DYK, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

Linda L. Hayward ("Ms. Hayward") petitions for review of the final decision of the Merit Systems Protection Board ("Board"), which affirmed the reconsideration decision of the Office of Personnel Management ("OPM") finding the Qualified Domestic Relations Order ("QDRO") submitted by Ms. Hayward's attorney unacceptable for processing and denying Ms. Hayward a former spouse survivor annuity under the Civil Service Retirement System ("CSRS").  <u>Hayward v. Office of Pers. Mgmt.</u>, 109 M.S.P.R. 13 (2008) ("<u>Final Decision</u>").  Because we conclude that the QDRO, which Ms. Hayward's attorney submitted to OPM, meets the requirements set forth in 5 U.S.C.

§ 8341(h)(1) and 5 C.F.R. § 838.803, we conclude that Ms. Hayward is entitled to have OPM process the QDRO with respect to her claimed former spouse survivor annuity. We therefore reverse the decision of the Board.

BACKGROUND

I.

Ms. Hayward is the former spouse of Jack N. Hayward ("Mr. Hayward"). The Haywards were married in 1963, were separated in 1984, and divorced in 1986. Mr. Hayward served on active duty, with both the U.S. Army and U.S. Navy, and was later a member of the Army Reserves. Hayward v. Office of Pers. Mgmt., No. PH-0831-07-0512-I-1, slip op. at 2 (M.S.P.B. Nov. 6, 2007) ("Initial Decision"). In addition, in 1966, Mr. Hayward began working in the first of several Civil Service positions with the Army. He retired from his final Civil Service position, Equipment Specialist for the U.S. Army Corps of Engineers, in 1996. Final Decision, 109 M.S.P.R. at 15.

On January 11, 1989, the Haywards signed a consent order in the Court of Common Pleas—Family Division, in Allegheny County, Pennsylvania ("Court of Common Pleas"), dividing their marital property. Pursuant to that order, on March 26, 1990, the Court of Common Pleas signed two QDROs, one addressing Mr. Hayward's military pension (the "1990 Military QDRO"), and one addressing his civil service pension (the "1990 Civil Service QDRO"). While largely identical, the two orders differ in certain respects. The 1990 Civil Service QDRO recites that Mr. Hayward "was employed by the Department U.S. Army [sic] and is a participant in the Civilian [sic] Service Retirement Plan," whereas the 1990 Military QDRO recites that Mr. Hayward "was employed by the U.S. Army Reserves and is a participant in the Military Retired

2008-3308                                    2

Pay Plan." Both orders indicate the retirement plans covered. The 1990 Civil Service QDRO states "[t]he Plan to which this Order applies is the Civil Service Retirement System Pension Plan in which Jack Hayward is a participant," while the 1990 Military QDRO specifies "[t]he Plan to which this Order applies is the Military Retired Pay Plan pension plan in which Jack Hayward is a participant." The 1990 Civil Service QDRO requires that the parties notify the "Civilian [sic] Service Retirement Plan Administrator" of address changes; the 1990 Military QDRO requires that the parties notify the "Military Retired Pay Plan Pension Fund Administrator" of such changes. Both QDROs provide that Ms. Hayward be paid a share of Mr. Hayward's retirement benefits. The QDROs also provide that the parties should submit the orders to the administrators of the respective retirement plans.

As far as survivor annuities are concerned, both orders state that "[i]n the event that the Participant is eligible for the Survivor Benefit Plan provided pursuant to Title 10 U.S.C. Section 1447, and 1448 et seq., the Participant shall select the survivor benefit form which pays the largest monthly benefit to the survivor." Notably, 10 U.S.C. § 1447 governs survivor benefit plans for armed forces members. At the same time, although Mr. Hayward's CSRS benefits are governed by Title 5, neither of the QDROs makes any mention of provisions in that title. Both orders do provide, however, that "[t]he survivor benefit chosen shall be at least 50% of the benefit provided to the Participant during the Participant's life."

II.

Shortly after the entry of the orders, the 1990 Military QDRO was submitted to the Defense Finance and Accounting Service ("DFAS") for processing. Hayward v.

Hayward, 919 A.2d 980, slip op. at 3 (Pa. Super. Ct. Jan. 18, 2007) (Table, non-precedential) ("Pa. Court Opinion").  Ms. Hayward also contends that, around that same time, her attorney submitted the 1990 Civil Service QDRO to OPM for processing.  However, the record before us only shows that, on March 28, 1990, Ms. Hayward's attorney submitted the 1990 Civil Service QDRO to the Civilian Personnel Office of the Army.  DFAS found the 1990 Military QDRO unacceptable for processing.  As a result, Ms. Hayward's attorney prepared another military QDRO, which was entered by the Court of Common Pleas on May 31, 1995 (the "1995 Military QDRO").  This QDRO was subsequently accepted by DFAS.  Id. at 3.

In 2001, Mr. Hayward filed a motion for special relief, requesting a modification of the 1995 Military QDRO.  Pa. Court Opinion, slip op. at 3.  During the resulting proceedings, a hearing officer for the Court of Common Pleas discovered that Mr. Hayward had retired from his Civil Service position in 1996, and had "surreptitiously placed his civil service pension into pay status" at the time of retirement.[1]  Id.  Accordingly, the court ordered Mr. Hayward to begin paying Ms. Hayward 30% of each monthly CSRS benefit, "plus an additional $500 per month" in arrears payments for the period between his 1996 retirement and when it was discovered he had been receiving an annuity.  Id. at 4.

Ms. Hayward's attorney submitted the 1990 Civil Service QDRO to OPM with a cover letter dated July 24, 2001.  She also attached the cover letter that was written when she sent the 1990 Civil Service QDRO to the Civilian Personnel Office of the

---

[1]  This meant that Mr. Hayward began receiving monthly benefits from his CSRS plan.  Ms. Hayward, however, was not informed that Mr. Hayward retired, and thus did not begin receiving her share at that time.

Army on March 28, 1990. Final Decision, 109 M.S.P.R. at 15. Her cover letter to OPM recited that she understood "the inquiries [regarding the 1990 Civil Service QDRO] should now be directed to you [OPM]." In due course, OPM advised Ms. Hayward that the QDRO which her attorney had submitted did not meet the requirements set out in 5 C.F.R. § 838.302,[2] and thus was unacceptable for processing. Ms. Hayward's attorney "then filed [a] proposed order[ ] to effect distribution of her share of [Mr. Hayward's] civil service . . . pension[ ]" with the Court of Common Pleas. The proposed order also provided for a CSRS former spouse survivor annuity. Pa. Court Opinion, slip op. at 4. On October 26, 2005, the Pennsylvania court accepted Ms. Hayward's proposed new Civil Service QDRO (the "2005 Civil Service QDRO"), which specifically provided for a CSRS former spouse survivor annuity. Id. Thereafter, on February 8, 2006, OPM accepted the October 26, 2005 QDRO for the purposes of awarding an apportionment of Mr. Hayward's monthly retirement annuity. However, since the 2005 Civil Service QDRO was a modification of the 1990 Civil Service QDRO and was entered after Mr. Hayward's 1996 retirement, OPM determined that the QDRO was not acceptable for processing under 5 U.S.C. § 8341(h)(4) and 5 C.F.R. § 838.806(a) for

---

[2] Section 838.302 of Title 5 of the Code of Federal Regulations ("C.F.R."), discussed by OPM and cited in the Initial Decision, falls under subpart C ("Requirements for Court Orders Affecting Employee Annuities") of part 838 of the C.F.R., whereas 5 C.F.R. § 838.803, cited by the Board in the Final Decision, falls under subpart H ("Requirements for Court Orders Awarding Former Spouse Survivor Annuities"). The language and regulatory purposes of the two provisions are the same. See, e.g., Perry v. Office of Pers. Mgmt., 243 F.3d 1337, 1344 (Fed. Cir. 2001) (noting the provisions are "virtually identical"). In order to be consistent with the Board, we discuss the specific requirements set out in section 838.803, while referencing opinions dealing with section 838.302.

purposes of a former spouse survivor annuity.[3]  See Initial Opinion, slip op. at 2.

Further, OPM reiterated that the 1990 Civil Service QDRO also was not acceptable for

processing for the same purpose, because it did not comply with the requirements of 5

C.F.R. part 838.  On June 15, 2007, OPM issued a reconsideration decision affirming its

prior determination.

III.

Ms. Hayward appealed OPM's reconsideration decision to the Board.  In her

Initial Decision, the administrative judge ("AJ") to whom the appeal was assigned

determined that, while the 2005 Civil Service QDRO was not acceptable for processing

under 5 U.S.C. § 8341(h)(4), the 1990 Civil Service QDRO was acceptable and should

have been processed by OPM for purposes of a former spouse survivor annuity.  Initial

Decision, slip op. at 2.  In reaching this conclusion, the AJ found that the references to a

"survivor benefit" and the "Survivor Benefit Plan" in the 1990 Civil Service QDRO were

explicit enough under 5 C.F.R. § 838.302 to provide Ms. Hayward with a former spouse

survivor annuity.  Noting that no "magic words" were needed, the AJ found based on

---

[3]  Section 8341(h)(4) of Title 5 provides,

> (4) For purposes of this subchapter, a modification in a decree, order, agreement, or election referred to in paragraph (1) of this subsection shall not be effective—
>
>> (A) if such modification is made after the retirement or death of the employee or Member concerned, and
>> (B) to the extent that such modification involves an annuity under this subsection.

Further, 5 C.F.R. § 838.806(a) states that a "court order awarding a former spouse survivor annuity is not a court order acceptable for processing if it is issued after the date of retirement or death of the employee and modifies or replaces the first order dividing the marital property of the employee or retiree and the former spouse."

references to the "Civilian [sic] Service Retirement System" and the "Civil Service Retirement System Pension Plan," that the clear intent of the QDRO was to provide Ms. Hayward with a CSRS former spouse survivor annuity. Id. The AJ directed Ms. Hayward to provide all necessary documentation to OPM to effectuate recognition of her CSRS former spouse survivor annuity. Id. at 3.

OPM and Mr. Hayward, as intervenor, petitioned the Board for review. The Board granted both petitions under 5 C.F.R. § 1201.115(d), and reinstated OPM's reconsideration decision, thereby reversing the AJ. Final Decision, 109 M.S.P.R. at 14. As an initial matter, the Board agreed with the AJ that the 2005 Civil Service QDRO was an improper modification of the 1990 Civil Service QDRO, as it was made after Mr. Hayward's retirement. Id. at 17. Thus, the Board found that OPM properly rejected the 2005 Civil Service QDRO under 5 U.S.C. § 8341(h)(4). Id. The Board then analyzed whether the original 1990 Civil Service QDRO was acceptable for processing.

The Board found that the 1990 Civil Service QDRO did not "expressly" provide for a former spouse survivor annuity as required by 5 U.S.C. § 8341(h)(1), and that therefore OPM properly refused to process the order. Final Decision, 109 M.S.P.R. at 18–19. Although the Board acknowledged that no "magic words" were required to award a CSRS former spouse survivor annuity, it stressed that the intent to provide a survivor annuity must "be clear, definite, explicit, plain, direct, and unmistakable, not dubious or ambiguous." Id. at 17. The Board determined that the 1990 Civil Service QDRO was ambiguous because, while it referred to the "Civilian [sic] Service Retirement System," it also cited "solely to statutes that do not apply to CSRS retirement benefits." Id. at 18. Focusing on the fact that Mr. Hayward was entitled to

both military and civil service benefits, the Board opined that while the purpose of the 1990 Civil Service QDRO may have been to award a CSRS survivor annuity despite the references to Title 10, the purpose equally could have been to award a military survivor annuity under Title 10, despite the references to the "Civilian [sic] Service Retirement Plan." Id. Because of this ambiguity, the Board concluded that the QDRO did not expressly provide a CSRS survivor annuity under 5 U.S.C. § 8341(h)(1).

The Board then proceeded to discuss 5 C.F.R. part 838, the regulatory section promulgated to assist OPM in effectuating state court orders affecting retirement benefits. Under 5 C.F.R. § 838.803, the 1990 Civil Service QDRO must expressly state that it is governed by 5 C.F.R. part 838. Id. at 19. However, the 1990 Civil Service QDRO not only failed to reference 5 C.F.R. part 838, but, according to the Board, also misreferenced "ERISA, the Internal Revenue Code, and statutes governing military retired pay benefits." Id. at 19–20 (citations omitted). In the Board's view, these references supported the conclusion that the QDRO was ambiguous, and indicated as well that it was not completed in compliance with 5 C.F.R. § 803.803(a). Thus, the Board concluded that the 1990 Civil Service QDRO was not acceptable for processing. Ms. Hayward has timely appealed the Board's final decision. We have jurisdiction over final decisions of the Board under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

On appeal, Ms. Hayward makes two arguments. First, she contends that the 1990 Civil Service QDRO was first submitted to OPM in 1991. As discussed below, QDROs received by OPM prior to 1993 are subject to less stringent qualification regulations. Ms. Hayward argues that the 1990 Civil Service QDRO is acceptable for

2008-3308                                8

processing under these less stringent regulations. Second, assuming, <u>arguendo</u>, that the order was received by OPM after 1993, Ms. Hayward argues that the clear purpose of the 1990 Civil Service QDRO was to provide a former spouse survivor annuity under the CSRS, and that therefore the QDRO meets the requirements under 5 U.S.C. § 8341(h)(1) and 5 C.F.R. § 838.803. We address Ms. Hayward's arguments in turn. Doing so, we start from the premise that our scope of review is limited. We may only set aside the Board's decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

## I.

The first issue we address is the question of which regulatory scheme applies to the 1990 Civil Service QDRO. Section 838.101(c) of Title 5 of the C.F.R. provides that "[s]ubparts A through I of this part apply only to court orders received by OPM on or after January 1, 1993," whereas subpart J of part 838 applies to court orders received by OPM before January 1, 1993. Whether subparts A through I or subpart J applies to the QDRO makes a difference. The reason is that OPM is afforded greater leeway in interpreting pre-1993 orders, which are governed by subpart J. <u>See</u> 5 C.F.R. §§ 838.1001–838.1018 (subpart J). For example, in the pre-1993 regime, OPM can expressly review QDROs as a whole to determine whether an award of benefits was intended, and QDROs "that direct <u>or imply</u>" that benefits are to be awarded "will be honored." 5 C.F.R. § 838.1004(c)(1)(i) (emphasis added).

The AJ and the Board both found that it was not until 2001 that Ms. Hayward's attorney contacted OPM regarding the 1990 Civil Service QDRO. See Final Decision, 109 M.S.P.R. at 15; Initial Decision, slip op. at 3. This, of course, is much after the 1993 cut-off date specified in 5 C.F.R. § 838.101(c). On appeal, Ms. Hayward argues this finding was in error. In doing so, she points to OPM's pre-hearing submissions to the AJ, indicating that OPM received the 1990 Civil Service QDRO in 1991. Specifically, when OPM sent its case file to the AJ, the cover letter indicated that "[i]n 1991, [Ms. Hayward] submitted a March 26, 1990 . . . QDRO."

The government counters that Ms. Hayward first submitted the 1990 Civil Service QDRO in 2001. Although the government recognizes that OPM's pre-hearing submission indicated that OPM first received the 1990 QDRO in 1991, the government points out that OPM later stated, in its closing argument submission to the AJ, that the 1990 Civil Service QDRO was not submitted until 2001. The government notes that Ms. Hayward has not provided any affirmative evidence (i.e., a cover letter to OPM) indicating she submitted the 1990 Civil Service QDRO to OPM before 2001. Appellee's Br. 7. It further notes that, as seen above, by letter dated March 28, 1990, Ms. Hayward's attorney transmitted the 1990 Civil Service QDRO to the Civilian Personnel Office of the Department of the Army, rather than OPM. The government also points out that, in her July 24, 2001 cover letter transmitting the 1990 Civil Service QDRO to OPM, Ms. Hayward's attorney stated that she "wrote to the Department of the Army, Civilian Personnel Office," "on March 28, 1990," but that she "never received a response from them" and "underst[ood] that these inquiries should now be directed to you [OPM]." Counsel also stated in the July 24 letter that if Mr. Hayward's CSRS pension was

already in pay status he "must have failed to inform you [OPM] of the existence of this Domestic Relations Order."

We agree with the government that substantial evidence supports the finding that Ms. Hayward first submitted the 1990 Civil Service QDRO to OPM in 2001. Although Ms. Hayward refers to the March 28, 1990 letter indicating she sent the 1990 Civil Service QDRO to the Department of the Army in 1990, no parallel letter exists from that time frame indicating the QDRO also was sent to OPM. Further, as seen, the 2001 letter to OPM indicates that Ms. Hayward had first directed her inquiries to the Department of the Army but later understood the QDRO "inquires should <u>now</u>" be directed to OPM. The "now" language supports the conclusion that no previous inquiries were sent to OPM. Rather, the prior inquiries were (erroneously) sent to the Department of the Army. In short, there is substantial evidence supporting the Board's finding that OPM did not receive the 1990 Civil Service QDRO until 2001. As 5 C.F.R. § 838.101(c) provides that all orders received after January 1, 1993 are to be governed by subparts A-I, we hold that the Board properly applied those regulations to the 1990 Civil Service QDRO.[4]

II.

A.

We next address whether the Board erred in affirming OPM's reconsideration decision that the 1990 Civil Service QDRO is not acceptable for processing under 5

---

[4]    This holding is limited to the "expressly provided" requirement of the regulations. As discussed below, the same is not necessarily true with respect to the retroactive application of the more technical linguistic requirements of 5 C.F.R. §§ 838.302 and 838.803.

U.S.C. § 8341(h)(1).  Section 8341(h)(1) provides, in relevant part (emphasis added), that

> a former spouse of a deceased employee, Member, annuitant, or former Member who was separated from the service with title to a deferred annuity under section 8338(b) of this title is entitled to a survivor annuity under this subsection, if and to the extent <u>expressly provided for</u> in an election under section 8339(j)(3) of this title, or in the terms of any decree of divorce or annulment or any court order or court-approved property settlement agreement incident to such decree.

Ms. Hayward argues that, in her case, a former spouse survivor annuity is "expressly provided for," because the purpose of the 1990 Civil Service QDRO is clear in that regard.  Ms. Hayward urges that both this court and the Board have ruled that no "magic words" are required to grant such an annuity.  <u>See, e.g.</u>, <u>Snyder v. Office of Pers. Mgmt.</u>, 463 F.3d 1338, 1342 (Fed. Cir. 2006); <u>Fox v. Office of Pers. Mgmt.</u>, 100 F.3d 141, 145–46 (Fed. Cir. 1996); <u>Thomas v. Office of Pers. Mgmt.</u>, 46 M.S.P.R. 340, 343 (1994).  According to Ms. Hayward, under the law of this court and the Board, the QDRO's multiple references to "survivor benefit," "Survivor Benefit Plan," "Civilian [sic] Service Retirement System," and "Civil Service Retirement System Pension Plan" are clear enough to grant a CSRS former spouse survivor annuity under § 8341(h)(1).  She also urges that a QDRO must be significantly more ambiguous than the one in this case in order for OPM to properly deny a former spouse survivor annuity.  In that regard, she notes that a CSRS former spouse survivor annuity has been denied when some provisions of the order purported to grant the annuity, while others seemingly waived rights to such an annuity.  <u>See, e.g.</u>, <u>Kincaid v. Office of Pers. Mgmt.</u>, 104 M.S.P.R. 42, 46 (2006).

In response, the government points to the 1990 Civil Service QDRO's multiple references to Title 10, the title which governs retirement and survivor benefits arising from service in the armed forces. The government further points out that the term "Survivor Benefit Plan" "is used to define survivor benefits relating to members or former members of the armed forces." Appellee's Br. 10 (citing 10 U.S.C. § 1447). The government stresses that OPM's role is strictly ministerial, and that it cannot be tasked with interpreting the terms of state divorce decrees or orders. See 5 C.F.R. § 838.101(a)(2).

## B.

We recognize that "OPM is neither qualified nor obligated to resolve disputes about the import of state divorce decrees . . . OPM's task is 'purely ministerial' with respect to court ordered property settlements." Perry v. Office of Pers. Mgmt., 243 F.3d 1337, 1341 (Fed. Cir. 2001) (quoting Snyder, 136 F.3d at 1477); see also 5 C.F.R. § 838.101(a)(2). We also recognize that "neither we nor the Board is permitted by the terms of 5 U.S.C. § 8341(h) to rewrite or equitably reform state court divorce decrees or settlement agreements that do not unambiguously provide for a CSRS annuity." Fox, 100 F.3d at 145. Thus, the intent to award a CSRS survivor annuity must be clear.

We set forth a framework for analyzing orders under § 8341(h)(1) in Fox, noting that "no magic words" are required to award a former spouse survivor annuity. 100 F.3d at 145; see also Snyder, 463 F.3d at 1342 (analyzing the requirement in the post-1993 regulatory regime). In order "to determine that a court order without any magic words does provide the survivor annuity benefit, the tribunal must first determine whether the order contains a pertinent clause regarding a survivor annuity." Snyder, 463 F.3d at

1342; see also Fox, 100 F.3d at 146. If the order does contain such a clause, the court "must inquire whether the operative terms in that clause can 'fairly be read as awarding' the annuity." Snyder, 463 F.3d at 1342 (quoting Fox, 100 F.3d at 146). If these two preliminary requirements are met, the court "must 'examine any evidence introduced concerning the marriage parties' intent and the circumstances surrounding the execution of the document' to interpret the clause." Snyder, 463 F.3d at 1342 (quoting Fox, 100 F.3d at 146). "If the evidence only dictates that the 'clause refers to a CSRS survivor annuity—then it is legal error to conclude that the document has not "expressly provided for" the award of a survivor annuity' as required by 5 U.S.C. § 8341(h)(1)." Snyder, 463 F.3d at 1342 (quoting Fox, 100 F.3d at 146). While we are mindful that "OPM will not look behind a state court divorce decree or property settlement order to ascertain the intent of the parties," Rosado v. Office of Pers. Mgmt., 165 F.3d 1377, 1378 (Fed. Cir. 1999), we may look to extrinsic evidence to discover whether the QDRO is unambiguous as to the intent to award a CSRS former spouse survivor annuity, Fox, 100 F.3d at 146 & n.3.

Turning to Ms. Hayward's case, we must first determine whether the 1990 Civil Service QDRO has a pertinent clause that can fairly be read as awarding a former spouse survivor annuity. In that regard, the QDRO provides that if Mr. Hayward is "eligible for the Survivor Benefit Plan," then he "shall select the survivor benefit form which pays the largest monthly benefit." The QDRO also references survivor benefits in multiple places. See ¶¶ 7c, 7e. We have previously held that the term "Survivors Benefit Plan" is explicit enough to award a CSRS annuity, despite the fact it may "mirror" the "military plan" language. Fox, 100 F.3d at 144 ("[T]he difference between

the term which would have precisely named the civil service benefit—'survivor annuity'—is only slightly different than the term actually used in the Agreement—'Survivors Benefit Plan.'"). We think that the language discussing the "Survivor Benefit Plan" in the 1990 Civil Service QDRO, when combined with the references to Mr. Hayward's participation in the "Civilian Service Retirement System" and the "Civil Service Retirement System Pension Plan" compels the conclusion that the survivor benefit clause in the QDRO can fairly be read as awarding a CSRS annuity. The government correctly observes that the 1990 Civil Service QDRO is ambiguous to the extent it refers to both Mr. Hayward's military benefits (based on the references to Title 10), and his civil service benefits (based on the references to the Civil Service Retirement System Pension Plan). However, because the pertinent clause in the 1990 Civil Service QDRO can <u>fairly</u> be read as awarding a CSRS survivor annuity, we must look to extrinsic evidence to discover the true intent of the parties. See <u>Snyder</u>, 463 F.3d at 1342.

Extrinsic evidence reveals that two QDROs in this case—the 1990 Military QDRO and the 1990 Civil Service QDRO—were entered by the Court of Common Pleas in March of 1990. This indicates that the parties were cognizant of the need to apportion both Mr. Hayward's military and civil service benefit plans. Ms. Hayward's attorney sent Mr. Hayward several letters indicating that multiple QDROs were attached and needed to be signed. Ms. Hayward contends that any ambiguity is removed because there are two orders. According to Ms. Hayward, the clear intent was to award her a survivor annuity under both Mr. Hayward's military and civil service plans. The government counters that the orders are remarkably similar, and that the parties likely

copied and cut and pasted the 1990 Military QDRO when preparing the 1990 Civil Service QDRO. The government states that the drafter of the two orders may have intended to delete paragraph 7c, the paragraph dealing with the Survivor Benefit Plan, from the 1990 Civil Service QDRO but keep it in the 1990 Military QDRO. The government argues this is especially likely because paragraph 7c specifically mentions that the plan is pursuant to "Section 1447, and 1448 et seq.," which govern military benefits.

We are not persuaded by the government's argument. The presence of two separate QDROs demonstrates that the parties appreciated the need to apportion both Mr. Hayward's civil service and military plans. Although the 1990 Civil Service QDRO refers to statutes governing military benefits, we have no difficulty concluding that these references reflect a lack of care in drafting the QDRO, rather than uncertainty about whether Ms. Hayward is entitled to a former spouse survivor annuity.

Additional evidence of record confirms to us that the clear intent of the 1990 Civil Service QDRO was to provide a CSRS former spouse survivor annuity. As we have stated, in enacting 5 U.S.C. § 8341(h)(1), Congress expressed concern that OPM might construe state dispositions contrary to their intended effect. Davenport v. Office of Pers. Mgmt., 62 F.3d 1384, 1387 (Fed. Cir. 1995) ("The statute requires that the [QDRO] 'expressly' provide for a survivor benefit, so as to ensure that OPM will not contrive a disposition that the state court did not contemplate."). As the Board has noted, the "traditional arbiters in divorce proceedings" are state courts, and thus OPM must only effectuate, and not interpret, such orders. Kincaid, 104 M.S.P.R. at 45.

In this case, we have clear guidance on how the Pennsylvania courts viewed the 1990 Civil Service QDRO. Both the Court of Common Pleas and the Superior Court of Pennsylvania found that the intent of the 1990 Civil Service QDRO was to award a CSRS former spouse survivor annuity. Specifically, the Court of Common Pleas stated that the later 2005 Civil Service QDRO, which clearly provided for a former spouse survivor annuity, "simply conformed with the Court's previously issued orders." Hayward v. Hayward, No. 85-02800-002, slip op. at 4 (Pa. Ct. Com. Pl. May 2, 2006). The Court of Common Pleas also stated that the 1990 Civil Service QDRO "in fact included a directive that the employee spouse elect a survivor benefit plan with Wife [Ms. Hayward] as the beneficiary." Id. The Superior Court affirmed this finding, stating that "the [1990] QDROs provide that Wife [Ms. Hayward] is entitled to . . . survivor benefits from both the military and civil service pensions." Pa. Court Opinion, slip op. at 9.

The regulations governing CSRS former spouse survivor annuities specifically provide that "any court order that . . . explains, clarifies, or interprets the original written order regardless of the effective date" is not an improper modification, and thus can be considered. 5 C.F.R. § 838.806(f)(2); see also Warren v. Office of Pers. Mgmt., 407 F.3d 1309, 1315 (Fed. Cir. 2005) (noting the regulations). In this case, the court that entered the QDROs stated that the parties' intent with respect to the 1990 Civil Service QDRO was to award a CSRS former spouse survivor annuity. We think it would frustrate the statutory purpose if we unambiguously knew what was contemplated by the parties and the court in drafting the 1990 Civil Service QDRO, and yet did not effectuate that intent. Cf. Davenport, 62 F.3d at 1384 ("If the purpose of the statute is to

ensure that OPM will respect the disposition intended by the state court order, OPM should be free in such a case to consult the divorce decree when the decree clarifies the meaning of the QDRO."). In sum, "the facts and circumstances . . . clearly dictate" the conclusion that the 1990 Civil Service QDRO was meant to award a CSRS survivor annuity for a former spouse. Fox, 100 F.3d at 146. Accordingly, we find that the 1990 Civil Service QDRO meets the requirements of § 8341(h)(1), and therefore is acceptable for processing by OPM.

C.

Finally, we address the government's contention that the 1990 Civil Service QDRO does not meet the requirements set forth in 5 C.F.R. § 838.803. Section 838.803 provides in relevant part:

> (a) Qualifying Domestic Relations Orders.
>
>> (1) Any court order labeled as a "qualified domestic relations order" or issued on a form for ERISA qualified domestic relations orders is not a court order acceptable for processing unless the court order expressly states that the provisions of the court order concerning CSRS or FERS benefits are governed by this part.
>>
>> (2) When a court order is required by paragraph (a)(1) of this section to state that the provisions of a court order concerning CSRS or FERS benefits are governed by this part the court order must—
>>
>>> (i) Expressly refer to part 838 of Title 5, Code of Federal Regulations, and
>>>
>>> (ii) Expressly state that the provisions of the court order concerning CSRS or FERS benefits are drafted in accordance with the terminology used in this part.
>>
>> (3) Although any language satisfying the requirement of paragraph (a)(2) of this section is sufficient to prevent a court order from being unacceptable under paragraph (a)(1) of this section, OPM recommends the use of the language provided in ¶ 001 in appendix

A to subpart F of this part to state that the provisions of the court order concerning CSRS or FERS benefits are governed by this part.

(4) A court order directed at employee annuity that contains the language described in paragraph (a)(2) of this section must also satisfy all other requirements of this subpart to be a court order acceptable for processing.

The government correctly notes that the 1990 Civil Service QDRO does not mention part 838, or state that the provisions concerning CSRS "benefits are drafted in accordance with the terminology used in [part 838.]" Appellee's Br. 9. Additionally, the government notes Board precedent to the effect that when the meaning of a QDRO is disputed, and there is no express reference to part 838 of C.F.R. Title 5, a court cannot use the provisions of that part to interpret any ambiguities. Appellee's Br. 14 (discussing 5 C.F.R. § 838.302); see Arnold v. Office of Pers. Mgmt., 94 M.S.P.R. 86, 94 (2003) (finding it inappropriate to apply regulations from part 838, "when there is no indication that the parties and the court intended that the provisions of the QDRO be governed by . . . part 838"). Although in some circumstances the Board has awarded a former spouse survivor annuity without the express language required by section 838.803, the government contends this approach is possible only "where there is no question . . . that only CSRS benefits were intended to be affected." Hunt v. Office of Pers. Mgmt., 89 M.S.P.R. 449, 453 (2001) (discussing 5 C.F.R. § 838.302). In this case, the government argues, the many references to Title 10 in the 1990 Civil Service QDRO create ambiguity and raise doubt regarding which of Mr. Hayward's two plans was meant to be affected. Thus, the government concludes the 1990 Civil Service QDRO does not meet the requirements set forth in section 838.803. In response, Ms. Hayward reiterates her arguments addressing 5 U.S.C. § 8341(h)(1). She states that

the parties' and the Pennsylvania courts' intent to award a CSRS former spouse survivor annuity is clear, and that "an inflexible application of the regulations would frustrate the language and intent of 5 U.S.C. § 8341(h)." Hunt, 89 M.S.P.R. at 453.

We agree with Ms. Hayward that the intent of her order supports an award of a CSRS former spouse survivor annuity. The order is "labeled as a qualified domestic relations order." Thus, it must meet the requirements set forth in 5 C.F.R. § 838.803. This court has had limited opportunity to address the requirements of 5 C.F.R. § 838.803. However, this court and the Board have analyzed the parallel language of 5 C.F.R. § 838.302.[5] The requirement in 5 C.F.R. § 838.302 "was designed to aid courts and parties in formulating property division provisions that would be acceptable to OPM

---

[5] The pertinent language of 5 C.F.R. § 838.302 is as follows:

(a) Qualifying Domestic Relations Orders.

(1) Any court order labeled as a "qualified domestic relations order" or issued on a form for ERISA qualified domestic relations orders is not a court order acceptable for processing unless the court order expressly states that the provisions of the court order concerning CSRS or FERS benefits are governed by this part.

(2) When a court order is required by paragraph (a)(1) of this section to state that the provisions of a court order concerning CSRS or FERS benefits are governed by this part the court order must expressly—

(i) Refer to part 838 of title 5, Code of Federal Regulations, and

(ii) State that the provisions of the court order concerning CSRS or FERS benefits are drafted in accordance with the terminology used in this part.

Section 838.302 of Title 5 of the C.F.R. is in subpart C of part 838, entitled "Requirements for Court Orders Affecting Employee Annuities."

and would carry out the court's and the parties' intentions." Perry, 243 F.3d at 1344. In promulgating the two parallel regulations, "OPM's purpose was to avoid the need to interpret . . . court orders, assuring uniformity of technical terms, [and] avoiding confusion in light of the many jurisdictions issuing [orders] . . . . OPM intended generally to quickly and easily end disputes over interpretations of state court orders." Hunt, 89 M.S.P.R. at 453; see also Court Orders Affecting Retirement Benefits, 57 Fed. Reg. 33,570 (July 29, 1992).

With this in mind, the Board has cautioned against a rigid application of 5 C.F.R. § 838.302 (or § 838.803) that "'frustrate[s] the language and intent of 5 U.S.C. § 8341(h).'" Arnold, 94 M.S.P.R. at 93 (quoting Hunt, 89 M.S.P.R. at 453). The purpose of the regulations is to preserve OPM's ministerial function, assuring that OPM will not have to interpret orders to ascertain the parties' intent. We adopt the Board's logic that "there is no rational reason to apply the regulation to deny the survivor annuity where the 'expressly provided' requirement of the statute is met, and the CSRS plan is the only plan that could have been intended by the court's order." Hunt, 89 M.S.P.R. at 453–54.

In this case, we find that the CSRS plan is the only plan that could have been intended by the Court of Common Pleas's order, and thus the requirements of 5 C.F.R. § 838.803 are met. As we previously stated, Mr. Hayward was entitled to benefits from both his military service and civil service. The Court of Common Pleas entered two QDROs, one addressing each of the plans. We find the 1990 Civil Service QDRO applied only to Mr. Hayward's civil service benefits based on the references to Mr. Hayward's employment by the Department of the U.S. Army, the "Civilian [sic] Service

Retirement System," the "Civil Service Retirement System Pension Plan," and the "Civilian Service Retirement Plan Administrator." By contrast, the 1990 Military QDRO contains no references to civilian service, mentions his employment with the U.S. Army Reserves, and indicates multiple times the plan addressed is the "Military Retired Pay Plan." For these reasons, Mr. Hayward's civil service plan "is the only plan that could have been intended by the court's [1990 Civil Service QDRO]." Hunt, 89 M.S.P.R. at 453–54.

Additionally, as we have discussed above, the Pennsylvania court system specifically recognized that the 1990 Civil Service QDRO granted a CSRS former spouse survivor annuity. The concerns addressed through the promulgation of the regulations are not issues in this case—the intent of the parties has been interpreted by the state court entering the QDROs. See Hunt, 89 M.S.P.R. at 453 ("[T]he purpose of the regulations is . . . to assure that OPM need not interpret the court order to ascertain the intent of the parties or the court . . . ."). In this case, OPM does not have to interpret an ambiguous order or fear erroneously construing the parties' intent. The Court of Common Pleas has stated the intent was to provide a CSRS former spouse survivor annuity, to be governed under 5 C.F.R. part 838. Therefore, we find that that the 1990 Civil Service QDRO is acceptable for processing under 5 C.F.R. § 838.803.

Moreover, the language that 5 C.F.R. §§ 838.302(a) and 803.803(a) require for orders to be "acceptable for processing" was added to the regulations in 1993, after the Court of Common Pleas entered the 1990 Civil Service QDRO. We recognized in Perry that applying the technical linguistic requirements of 5 C.F.R. § 838.302 to orders

written before the regulations were promulgated would defeat the purpose of the regulation:

> Indeed, applying subsection 302(a) retroactively to the [previously written] divorce decree would be inconsistent with the purpose of requiring particular language in divorce decrees. That requirement was designed to aid courts and parties in formulating property division provisions that would be acceptable to OPM and would carry out the court's and the parties' intentions.
> . . . .
>
> When the [state court] entered the divorce decree in 1986, it had no reason to anticipate that seven years later OPM would impose a new requirement without which the court's language would be unacceptable, or to try to include language that would satisfy that future requirement. Thus, the purpose of specifying the language to be included in a court order that described a divorce decree as a "Qualified Domestic Relations Order"—to enable the court to draft such an order that would be acceptable to OPM— would not be served by making the regulatory requirement retroactive, since the court would have had no reason or basis for meeting the requirement when it entered the decree years before.

Perry, 243 F.3d at 1344. The same is necessarily true of 5 C.F.R. § 838.803. Although the order here was not received by OPM until after 1993, the order was entered in 1990, before the regulations were drafted. Under these circumstances, applying the technical language of the regulations to the order would not serve the purpose of those regulations.

As a final note, we observe that the safest course of action is to follow the suggested language provided by OPM. In 5 C.F.R., part 838, subpart F, Appendix A, ¶ 001, OPM suggests adding the following paragraph to CSRS QDROs to ensure they meet the requirements of 5 C.F.R. §§ 838.302 and 838.803:

> The court has considered the requirements and standard terminology provided in part 838 of Title 5, Code of Federal Regulations. The terminology used in the provisions of this order that concern benefits under the Civil Service Retirement System are governed by the standard conventions established in that part.

Use of this language will better ensure that the intent of the parties is clear, and that former spouses are properly awarded survivor annuities when they are entitled to them. Further, it will (hopefully) decrease the amount of litigation required to award these benefits.

## CONCLUSION

For the foregoing reasons, we hold that the 1990 Civil Service QDRO meets the requirements specified in 5 U.S.C. § 8341(h)(1) and 5 C.F.R. § 838.803, and thus is acceptable for processing by OPM with respect to Ms. Hayward's former spouse survivor annuity. We therefore reverse the decision of the Board and remand the case to the Board, with the instruction that it remand to OPM so that the 1990 Civil Service QDRO may be processed in a manner consistent with this opinion.[6]

## <u>REVERSED</u> and <u>REMANDED</u>

---

[6] Because the government has not raised other deficiencies in the 1990 Civil Service QDRO, we are instructing the Board to remand with instructions to process the QDRO. See Fox, 100 F.3d at 146 (reversing, without remanding, the decision of the Board to deny a former spouse survivor annuity); see also Snyder, 463 F.3d at 1343 (Plager, J., concurring) (noting this court can decide a case in favor of the former spouse without remand).