# United States Court of Appeals for the Federal Circuit

---

**DIRECTOR OF THE OFFICE OF PERSONNEL MANAGEMENT,**
*Petitioner*

**v.**

**RONALD L. MOULTON, MERIT SYSTEMS PROTECTION BOARD,**
*Respondents*

---

2024-1774

---

Petition for review of the Merit Systems Protection Board in No. DE-0841-18-0053-I-1.

---

Decided:  October 10, 2025

---

KYLE SHANE BECKRICH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for petitioner.  Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, YAAKOV ROTH; ROXANN SAMANTHA JOHNSON, Office of General Counsel, Office of Personnel Management, Washington, DC.

EVAN JENNINGS MANN, Munger, Tolles & Olson LLP, San Francisco, CA, argued for respondent Ronald L. Moulton.  Also represented by GINGER ANDERS, RACHEL

MILLER-ZIEGLER, Washington, DC.

DeANNA SCHABACKER, Office of the General Counsel, United States Merit Systems Protection Board, Washington, DC, argued for respondent Merit Systems Protection Board. Also represented by ALLISON JANE BOYLE, KATHERINE MICHELLE SMITH.

———————————

Before PROST, WALLACH, and CHEN, *Circuit Judges.*

PROST, *Circuit Judge.*

The Director of the Office of Personnel Management ("OPM") petitions for review of a final order of the Merit Systems Protection Board ("Board").[1] This case presents a purely legal question of statutory interpretation—whether, under 5 U.S.C. §§ 8421(c) and 8467(a), OPM apportions the annuity supplement only when the terms of a court order (e.g., a divorce decree) expressly provide for division of the supplement. For the reasons below, we conclude that OPM cannot divide a retiree's annuity supplement unless the division of the supplement is expressly provided for in a court order. Thus, we affirm.

BACKGROUND

I

Before turning to the facts of this case, we provide a summary of the relevant statutory scheme—the Federal Employees' Retirement System Act ("FERS"). In 1986, Congress enacted FERS, Pub. L. No. 99-335, 100 Stat. 514 (1986), as a successor to the retirement benefits scheme for federal employees under the Civil Service Retirement

---

[1] This court granted OPM's petition for review under 5 U.S.C. § 7703(d). *OPM v. Moulton*, No. 24-109, 2024 WL 1953955, at *1 (Fed. Cir. May 3, 2024).

System.  FERS generally provides a three-part plan for federal retirees: (1) Social Security benefits, (2) a Thrift Savings Plan (a retirement savings and investment plan similar to 401(k) plans available to private-sector employees), and (3) a basic annuity payment.

Some federal employees retire before the age of sixty-two and thus do not have access to their Social Security benefits immediately upon retirement.  As a result, these retirees may receive an annuity supplement until they reach the minimum age to qualify for Social Security benefits.  5 U.S.C. § 8421(a).  The supplement is approximately the same value of the Social Security benefit a retiree may receive starting at age sixty-two.  *Id.* § 8421(b).

Congress recognized that a retiree might allocate some portion of his or her benefits to a former spouse.  Section 8467(a) provides that "[p]ayments under this chapter which would otherwise be made to an employee . . . *shall* be paid (in whole or in part) . . . to another person if and to the extent *expressly provided for* in the terms of– (1) any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation."  *Id.* § 8467(a) (emphasis added).  Section 8421(c) provides that annuity supplements "be treated in the same way as" the basic annuity.  *Id.* § 8421(c).

Before 2016 and for almost thirty years, "OPM did not include the [a]nnuity [s]upplement in the calculation of annuity benefits to be paid to a former spouse, except under certain circumstances where the state court order *expressly* addressed the [a]nnuity [s]upplement."  J.A. 182 (emphasis added).  "OPM previously considered the [a]nnuity [s]upplement to be a Social Security-type benefit and thus not allocable as between former spouses."  *Id.*

In 2016, OPM "reverse[d]" the way it apportioned annuity supplements.  *Id.*  This change caused the Federal

Law Enforcement Officers Association to "raise[] concerns that OPM's non-public change was made without prior notice." *Id.* Under OPM's new interpretation, if a court order required that basic annuity be divided, then the retiree's annuity supplement must also be divided the same way, even if the court order did not expressly provide that the supplement should be divided. OPM implemented these changes despite its own Office of the Inspector General concluding that "OPM may not adopt or apply this change without undergoing notice and comment rulemaking." J.A. 194; *see also* J.A. 4–6. OPM characterized its new interpretation as correcting an "operational error." Oral Arg. at 1:20–31, 7:22–8:24.[2] OPM also applied its new interpretation retroactively—again, despite OPM's Office of the Inspector General reporting that "OPM lacks the authority to" do so. J.A. 197.

## II

Mr. Moulton is a former air traffic controller with the Department of Transportation. He divorced from his ex-wife, Jill Moulton, in July 2004. J.A. 1, 23. A Colorado state court issued a "Decree of Dissolution of Marriage" stating in relevant part that Ms. Moulton was entitled to a "pro[ ]rata share" of Mr. Moulton's "gross monthly annuity" and "any benefit [he] earn[ed] based on [his] special [Air Traffic Controller] service." J.A. 119, 120 ¶ 6.[3] The decree

---

[2] No. 24-1774, https://www.cafc.uscourts.gov/oral-arguments/24-1774_08082025.mp3.

[3] OPM uses the terms "gross annuity," "gross monthly annuity," and "basic annuity" interchangeably to refer to the basic annuity. J.A. 190 n.30; *see also* 5 C.F.R. § 838.103 (defining "[g]ross annuity"). The divorce decree explicitly adopted the terminology of 5 C.F.R. part 838, J.A. 119–20 ¶ 3, and the relevant section is almost identical to the model language provided in 5 C.F.R. part 838, subpart F, Appendix A ¶ 204.

did not explicitly mention allocation of his annuity supplement.

Mr. Moulton retired in May 2010 at age forty-seven. Because he was younger than sixty-two, he was entitled to and received an annuity supplement under 5 U.S.C. § 8421.

On August 25, 2016, OPM issued a letter to Mr. Moulton informing him that it had miscalculated the amount owed to his ex-wife and that he owed her nearly $25,000. J.A. 90–91. The letter stated that his payments will be reduced by $250 per month going forward (except the final installment, which will be reduced by $35.30). *Id.*[4] Mr. Moulton requested reconsideration of OPM's decision, but OPM affirmed its initial decision. J.A. 25. Mr. Moulton eventually challenged OPM's decision at the Board.[5] J.A. 25–26. The administrative judge rejected OPM's reinterpretation and concluded § 8421(c) requires OPM to divide an annuity supplement only if expressly provided for in a court order. *See* J.A. 35–36.

OPM petitioned the Board for review. The Board denied OPM's petition and affirmed the administrative judge's decision. *Moulton v. OPM*, No. DE-0841-18-0053-I-1, 2023 WL 8254628 (M.S.P.B. Nov. 28, 2023). OPM then timely petitioned this court for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).[6]

---

[4] OPM has since waived collection of the overpayment (nearly $25,000) to Mr. Moulton. Pet'r's Br. 5 n.2.

[5] There were several intervening events between when OPM issued its reconsideration decision and when Mr. Moulton challenged OPM's decision at the Board that are not relevant to this appeal.

[6] This court stayed "the Board's November 28, 2023 opinion and order . . . until further notice of this court." Order at 2 (Apr. 21, 2025), ECF No. 49.

DISCUSSION

We review a Board decision for whether it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). This case presents an issue of statutory interpretation, which we review de novo. *O'Farrell v. Dep't of Def.*, 882 F.3d 1080, 1083 (Fed. Cir. 2018).

The question before us is whether, under 5 U.S.C. §§ 8421(c) and 8467(a), OPM may apportion a federal retiree's annuity supplement only when expressly provided for in a court order. OPM answers in the negative; Mr. Moulton and the Board in the affirmative. For the following reasons, we agree with Mr. Moulton and the Board and conclude that the statutory text demands—and the statutory scheme and history confirm—OPM apportion a retiree's annuity supplement only when expressly provided for in a court order.

I

We begin our analysis with the statutory text. *See Lackey v. Stinnie*, 604 U.S. 192, 199 (2025). Section 8467(a) is the first of two statutory provisions at the heart of this dispute. That section, titled "Court orders," states in relevant part that "[p]ayments under this chapter . . . shall be paid (in whole or in part)" to the former spouse if "expressly provided for in the terms of . . . any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation." 5 U.S.C. § 8467(a).

The other statutory provision at the heart of this dispute is § 8421, titled "Annuity supplement," which references § 8467 and states:

>An amount under this section shall, for purposes of section 8467, *be treated in the same way* as an amount computed under section 8415.

5 U.S.C. § 8421(c) (emphasis added).

Section 8421(c), thus, sets forth a rule for apportioning the annuity supplement. It refers to two different amounts, using two different phrases. *Compare id.* ("[a]n amount under this section," i.e., an annuity supplement), *with id.* ("an amount computed under section 8415," which governs the computation of the basic annuity). The statute then establishes the relationship between these two amounts—the annuity supplement "shall . . . be treated in the same way" as the basic annuity amount. *Id.*

Around the time FERS was enacted, American Heritage Dictionary defined "treat" to mean "regard or consider in a certain way." *Treat, American Heritage Dictionary* (2d college ed. 1982); *see also Treat, American Heritage Dictionary* (3d ed. 1992) ("To regard and handle in a certain way"). It also defined "way" as a "manner of doing something," like for example, there are "several ways of solving this problem." *Way, American Heritage Dictionary* (2d college ed. 1982); *see also Way, American Heritage Dictionary* (3d ed. 1992) ("A manner or method of doing").

In the context of § 8421(c), therefore, the phrase "shall . . . be treated in the same way" means that the annuity supplement shall be regarded (or handled) using the same manner (or method) as the basic annuity. The basic annuity is apportioned to another person only if apportionment is "expressly provided for" in a court order. 5 U.S.C. § 8467(a). To treat annuity supplements "in the same way" means that the supplement may be apportioned *only* if expressly provided for in a court order.

Section 8421(c) also states that the annuity supplement "for purposes of section 8467" will be treated in the same way as the basic annuity. This language provides

context and additional clarity for OPM to follow the procedural requirements of § 8467 (among them, that a payment must be "expressly provided for") as to annuity supplements. *See Fort Stewart Schs. v. FLRA*, 495 U.S. 641, 646 (1990) (provisions that, although "technically unnecessary," are sometimes "inserted out of an abundance of caution—a drafting imprecision venerable enough to have left its mark on legal Latin *(ex abundanti cautela)*." (italics in original)).

## II

The broader statutory scheme further supports Mr. Moulton's and the Board's interpretation. *See City & Cnty. of San Francisco v. EPA*, 604 U.S. 334, 350 (2025) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (cleaned up)). First, the annuity supplement was created for early retirees who are not yet eligible to receive their Social Security benefits. For nearly thirty years and until 2016, OPM viewed the supplemental annuity as a Social Security-type benefit, which was presumptively not allocable between former spouses. Only a "state court order [that] expressly addressed the [a]nnuity [s]upplement" could result in division. J.A. 182; *see also* J.A. 192; Mr. Moulton's Br. 4; Board's Br. 6 n.4.

Second, Congress has shown that it knows how to specify when annuity supplements will be included in any annuity division. When Congress enacted the FERS provisions at issue here, Congress also addressed the treatment of annuities for Central Intelligence Agency ("CIA") employees. Section 506 of FERS amended the CIA Retirement Act of 1964, allowing certain CIA employees to receive benefits under FERS, with some modifications. One of those modifications is outlined in § 304(g), covering "Special Rules for Former Spouses," which provided that:

> The entitlement of a former spouse to a portion of an annuity of a retired officer or employee of the Agency under this section *shall extend to any supplementary annuity payment* that such officer or employee is entitled to receive under section 8421 of title 5, United States Code.

FERS, Pub. L. No. 99-335, sec. 304(g), 100 Stat. at 627 (emphasis added); *see also* 50 U.S.C. § 2154(c)(2) (codifying a similar rule). "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (cleaned up). Congress chose to have annuity supplements be included in the benefits payable to a former spouse of a CIA employee by stating that such an *entitlement* to a basic-annuity portion "shall extend to any supplementary annuity payment," but chose not to do so in § 8421(c), instead requiring the annuity supplement be "treated in the same way" as the basic annuity. Accordingly, under §§ 8421(c) and 8467(a), Congress intended to have court orders resolve how the annuity supplement is allocated.

Third, adopting OPM's interpretation—that the annuity supplement should be subject to the same allocation as the basic annuity, even if the annuity supplement is not expressly provided for in a court order—would result in OPM effectively rewriting divorce decrees and departing from the express will of the parties. For example, if a court order allocates the basic annuity and annuity supplement in different proportions—e.g., 50/50 for basic annuity and 20/80 for annuity supplement—under OPM's interpretation, OPM would ignore the annuity-supplement allocation and apply the 50/50 basic-annuity allocation to both benefits. To take another example, if a court order allocates the basic annuity 50/50 and states that the parties will not allocate the annuity supplement, under OPM's

interpretation, it will honor the parties' 50/50 allocation as to the basic annuity but also require a 50/50 allocation of the annuity supplement. "OPM is neither qualified nor obligated to resolve disputes about the import of state divorce decrees[;] OPM's task is purely ministerial with respect to court ordered property settlements." *Hayward v. OPM*, 578 F.3d 1337, 1345 (Fed. Cir. 2009) (cleaned up) (addressing survivor annuity under the Civil Service Retirement System); *see also* 5 C.F.R. § 838.101(a)(2) ("In executing court orders . . . OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws. In carrying out the court's instructions, *OPM performs purely ministerial actions*." (emphasis added)); Oral Arg. at 6:47–7:07 (OPM's counsel describing OPM's role as "ministerial").

## III

Central to OPM's position is its argument that Mr. Moulton's and the Board's interpretation would render § 8421(c) superfluous. *See, e.g.*, Pet'r's Br. 16–18; Reply Br. 2, 7. Section 8467 applies to "[p]ayments under this chapter," here chapter 84, which includes both the basic annuity and the annuity supplements. So, according to OPM's superfluity argument, under Mr. Moulton's and the Board's interpretation, there is no need for § 8421(c), because § 8467 already applies to all FERS payments, including annuity supplements. To address this purported superfluity issue, OPM argues that § 8421(c) requires the inclusion of annuity supplements in the calculations of the basic annuity for purposes of a court-ordered apportionment—even when, as is the case here, that apportionment says nothing regarding annuity supplements.

There are several flaws with OPM's superfluity argument. To start, OPM's interpretation has its own superfluity problems by rendering the "expressly provided for" language in § 8467(a) superfluous. If annuity supplements are always allocated in the same manner as the basic

annuity, as OPM argues, then § 8467(a)'s language that "[p]ayments under [chapter 84]" will be apportioned only when "expressly provided for" by a court order is superfluous.

Further, the canon against surplusage is not absolute and has limited force here because both parties' interpretations do not give effect to every word. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 106 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute." (cleaned up)). And "[w]hile it is generally presumed that statutes do not contain surplusage, instances of surplusage are not unknown." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 299 n.1 (2006); *see also Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Redundancy is not a silver bullet."). Congress is no stranger to redundancies. *See Barton v. Barr*, 590 U.S. 222, 239 (2020) ("[R]edundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication."). In any event, "[s]ometimes the better overall reading of the statute contains some redundancy," *Rimini St.*, 586 U.S. at 346, as is the case here.

Moreover, and as discussed above, redundancies can also serve a clarifying purpose, which they appear to do here. Section 8421(c) clarifies for OPM how the annuity supplements should be treated for the purposes of § 8467(a)—i.e., annuity supplements should only be apportioned if expressly provided for in a court order. OPM reads § 8421(c) as designed to depart from how § 8467 would otherwise apply to annuity supplements. But there is no suggestion in the statute that Congress sought to effect a

*departure* from the ordinary rule by enacting language that expressly requires treatment in the same way.[7]

*    *    *

Accordingly, for the foregoing reasons, we interpret 5 U.S.C. §§ 8421(c) and 8467(a), together, to require OPM to apportion a retiree's annuity supplement *only* when expressly provided for in a court order.

CONCLUSION

We have considered OPM's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.[8]

**AFFIRMED**

---

[7]    OPM's reliance on *Federal Law Enforcement Officers Association v. Ahuja*, No. 19-cv-735, 2021 WL 4438907 (D.D.C. Sep. 28, 2021), is also unpersuasive. The district court's opinion is not binding on us, and the D.C. Circuit vacated the district court's decision because it determined the district court lacked jurisdiction. *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 555 (D.C. Cir. 2023).

[8]    The previously imposed stay of the Board's November 28, 2023 opinion and order, ECF No. 49, is lifted on the same day the mandate issues.