NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOYCE BECKSTEAD,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2020-1884

---

Petition for review of the Merit Systems Protection Board in No. DE-0831-20-0119-I-1.

---

Decided: January 7, 2020

---

RAYMOND SCOTT DIETRICH, Raymond S. Dietrich, PLC, Phoenix, AZ, for petitioner.

STEPHANIE FLEMING, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JEFFREY B. CLARK, REGINALD THOMAS BLADES, JR., ROBERT EDWARD KIRSCHMAN, JR.; ROXANN SAMANTHA JOHNSON, Office of General Counsel, United States Office of Personnel Management, Washington, DC.

---

Before LOURIE, DYK, and STOLL, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Joyce Beckstead ("Mrs. Beckstead") appeals from a decision of the Merit Systems Protection Board (the "Board") denying her a survivor annuity arising from her former husband's federal service. *See Beckstead v. Office of Pers. Mgmt.*, 2020 MSPB LEXIS 1897 (M.S.P.B. May 11, 2020) ("*Board Decision*"). We *affirm*.

## BACKGROUND

Mrs. Beckstead was married to Lynn Beckstead ("Mr. Beckstead") on February 4, 1965. In 1971, Mr. Beckstead became a federal employee covered under the Civil Service Retirement System. In 2007, he applied for retirement and elected a survivor annuity for his spouse, Mrs. Beckstead. Each year after Mr. Beckstead's retirement, the Office of Personnel Management ("OPM") sent him an Annual Notice of Survivor Annuity Election Rights ("Annual Notice"). *See* SAppx. 39–40; *see also Board Decision*, 2020 MSPB LEXIS 1897, at \*2.

On December 3, 2009, Mr. and Mrs. Beckstead divorced. A state court in New Mexico issued a Default Decree of Dissolution of Marriage ("Divorce Decree"), which stated in relevant part that Mrs. Beckstead was entitled to:

> Exactly one half (1/2) of any and all retirement benefits, 401(k) or other retirement account of [Lynn]. Such account(s) to be divided by Qualified Domestic Relations Order (QDRO).

SAppx. 10. The Divorce Decree did not specifically provide for a survivor annuity, and no QDRO was issued while Mr. Beckstead was alive. Following the divorce, Mr. Beckstead did not notify OPM of the divorce and he never made a new election of a survivor annuity for Mrs. Beckstead.

Mr. Beckstead died on July 9, 2018, and Mrs. Beckstead applied for survivor annuity benefits thereafter. OPM informed Mrs. Beckstead that her application could not be processed because her Divorce Decree did not include the referenced QDRO. On January 18, 2019, more than seven months after Mr. Beckstead's death, the New Mexico state court issued a QDRO. SAppx. 24–26.

On March 19, 2019, OPM informed Mrs. Beckstead that she was not entitled to survivor annuity benefits because the QDRO was issued after Mr. Beckstead's death. OPM then reconsidered and reversed its decision on the basis that the agency had failed to properly notify Mr. Beckstead of his rights to preserve the survivor annuity benefit after a divorce. SAppx. 32. Upon further review, however, OPM concluded that Mr. Beckstead had received notices informing him of his rights, but he did not elect a survivor annuity for Mrs. Beckstead after their divorce. Thus, on December 6, 2019, OPM confirmed its initial finding that Mrs. Beckstead was not entitled to former spouse survivor annuity benefits. SAppx. 35–36.

Mrs. Beckstead appealed to the Board. On May 11, 2020, the Administrative Judge ("AJ") issued an initial decision affirming OPM's denial of former spouse survivor annuity benefits. That decision became the final decision of the Board on June 15, 2020. Mrs. Beckstead appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

A decision of the MSPB must be affirmed unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We will not overturn an agency decision if it is supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305

U.S. 197, 229 (1938).  "The standard is not what the court would decide in a *de novo* appraisal, but whether the administrative determination is supported by substantial evidence on the record as a whole."  *Parker v. United States Postal Serv.*, 819 F.2d 1113, 1115 (Fed. Cir. 1987).  The burden of establishing reversible error in a MSPB decision rests upon the petitioner.  *See Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

I

By law, Mr. Beckstead's election of a survivor annuity for Mrs. Beckstead terminated upon their divorce.  *See* 5 U.S.C. § 8339(j)(5)(A); *Holder v. Office of Pers. Mgmt.*, 47 F.3d 412, 415 (Fed. Cir. 1995) ("Subsequent divorce extinguishes an election made at retirement.").  Following the divorce, there were multiple ways in which Mrs. Beckstead could have again become entitled to the survivor annuity, *see* 5 U.S.C. § 8341(h)(1), none of which occurred in this case.

First, Mr. Beckstead could have expressly elected a survivor annuity for Mrs. Beckstead  within two years of the divorce.  5 U.S.C. § 8341(h)(1); 5 U.S.C. § 8339(j)(3).  Although the AJ credited testimony that Mr. Beckstead intended to provide a survivor annuity for Mrs. Beckstead, *Board Decision*, 2020 MSPB LEXIS 1897, at *3 n.3, it is undisputed that Mr. Beckstead did not, in fact, make the statutorily required express election.

Second, Mrs. Beckstead would have been entitled to a survivor annuity "if and to the extent expressly provided for . . . in the terms of any decree of divorce or annulment or any court order or court-approved property settlement agreement incident to such decree."  5 U.S.C. § 8341(h)(1); *see also* 5 C.F.R. § 838.804(a).  While there are two court orders that could potentially have entitled Mrs. Beckstead to a survivor annuity, the AJ correctly determined that neither order was sufficient to meet the statutory and regulatory requirements.  The Divorce Decree did not "[e]xpressly

state that the former spouse is entitled to a former spouse survivor annuity using terms that are sufficient to identify the survivor annuity." 5 C.F.R. § 838.804(b). The QDRO was not issued until after Mr. Beckstead died, and it was not the first order dividing marital property. *See* 5 C.F.R. § 838.806(b); *see also id.* at § 838.806(f)(1) (defining the "first order dividing the marital property of the retiree and the former spouse").

Accordingly, no election or valid court order granted Mrs. Beckstead a survivor annuity after the original election terminated upon her divorce from Mr. Beckstead. The Board correctly concluded that Mrs. Beckstead failed to prove that she is entitled to a survivor annuity.

## II

Mrs. Beckstead challenges OPM's actions on due process grounds. According to Mrs. Beckstead, her former husband's election of a survivor annuity when he applied for retirement "create[d] a form of vesting, so to speak," of his retirement benefits, and Mrs. Beckstead contends that she thus belongs to a unique class of individuals to whom federal benefits have already been granted. *See* Petitioner Br. 6. She asserts that OPM "took [her] survivor benefit from her without notice." *Id.* at 7. She acknowledges that current federal law did not require OPM to provide notice to her upon termination of the survival annuity election when she was divorced. *See id.*; *see also Board Decision*, 2020 MSPB LEXIS 1897, at \*6. But she contends that the law—specifically, Public Law 95-317, which amended the relevant sections in 5 U.S.C. §§ 8339 and 8341—is facially invalid because it violates the Fifth Amendment by failing to require that former spouses be provided with notice and an opportunity to be heard.

The only legal authority Mrs. Beckstead cites is *Mullane v. Central Hanover Bank & Trust Co.*, a case in which the Supreme Court addressed the "constitutional sufficiency of notice to beneficiaries on judicial settlement of

accounts by the trustee of a common trust fund." 339 U.S. 306, 307 (1950). There, the Court concluded that "[c]ertainly the proceeding is one in which [the beneficiaries] may be deprived of property rights and hence notice and hearing must measure up to the standards of due process." *Id.* at 313. Here, in contrast, Mrs. Beckstead cannot support her assertion that she has been deprived of a vested property right because she did not satisfy the statutory conditions for entitlement to the claimed survivor annuity; specifically, she was not Mr. Beckstead's "current spouse" at the time of his death. *See* 5 U.S.C. § 8339(j)(5)(A); *Warren v. Office of Pers. Mgmt.*, 407 F.3d 1309, 1314 (Fed. Cir. 2005) ("At the time of the divorce, Mr. Pike's survivor annuity was not one of the 'benefits available,' because a survivor annuity would not become available for collection until Mr. Pike's death and then only if Ms. Warren survived him."); *Davis v. Office of Pers. Mgmt.*, 918 F.2d 944, 946 (Fed. Cir. 1990) ("The present case [involving a survivor annuity], therefore, is different from situations where Congress has expressly caused a right in money to 'vest' automatically on the death of the retiree.").

Mrs. Beckstead insists that if she had been aware that Mr. Beckstead's election had terminated, she could have acted to protect her interest. But, setting aside our sympathy for Mrs. Beckstead in this case, we have held in analogous situations with regard to survivor annuities that "[t]he government is not responsible for providing instructions to each potential annuitant." *Davis*, 918 F.2d at 947; *see also Sandel v. Office of Pers. Mgmt.*, 28 F.3d 1184, 1187 (Fed. Cir. 1994) ("[P]etitioner identifies no provision either in the statute or in the OPM's regulations requiring the OPM to notify former spouses of retirees of their option of applying for survivor benefits."). Thus, consistent with our precedent, we hold that OPM did not violate Mrs. Beckstead's right to due process by failing to provide her with notice of the consequences that the divorce had on her former husband's elected survivor annuity.

## III

Lastly, Mrs. Beckstead contends that OPM failed to provide Mr. Beckstead with legally sufficient notice of his rights regarding his survivor annuity election while he was alive. "OPM is statutorily obligated to annually inform each annuitant of such annuitant's rights of election under sections 8339(j) and 8339(k)(2) of Title 5, United States Code." *Hairston v. Office of Pers. Mgmt.*, 318 F.3d 1127, 1131 (Fed. Cir. 2003) (citing 5 U.S.C. § 8339 note). In *Downing v. Office of Pers. Mgmt.*, we confirmed that, under our precedent and the relevant statute, OPM's failure to provide notice could result in entitlement to survivor annuity benefits even without a new election after a divorce:

> A former spouse may receive survivor annuity benefits in the absence of a new election by the annuitant if (1) the annuitant did not receive the required annual notice of his election rights under 5 U.S.C. § 8339(j), *see* Act of July 10, 1978, § 3, Pub. L. No. 95-317, 92 Stat. 382, amended by Reorganization Plan No. 2 of 1978, § 102, 92 Stat. 3783 (codified as amended at 5 U.S.C. § 8339 note (2006) ("Annual Notice to Annuitant of Rights of Election Under Subsecs. (j) and (k)(2) of This Section")), and (2) "there is evidence sufficient to show that the retiree indeed intended to provide a survivor annuity for the former spouse." *Hernandez v. Office of Pers. Mgmt.*, 450 F.3d 1332, 1334-35 (Fed. Cir. 2006) (quoting *Wood v. Office of Pers. Mgmt.*, 241 F.3d 1364, 1368 (Fed. Cir. 2001)).

619 F.3d 1374, 1377 (Fed. Cir. 2010). Ultimately, however, we concluded in *Downing* that the first prong of that exception was not met. *Id.* at 1377–78. We reach the same conclusion in this case.

Mrs. Beckstead does not contest the evidence in the record showing that OPM sent its Annual Notice to all annuitants on OPM's computer master annuity roll, and she

concedes that Mr. Beckstead received the Annual Notices. *See* Petitioner Br. 9–10. Mrs. Beckstead challenges only the "content and form" of the notice that Mr. Beckstead received. *Id.* at 10–11. She argues that OPM's Annual Notice was misleading because it identified five scenarios that could affect an employee's annuity, and an employee would have difficulty determining which scenario applied. She further argues that, because this case involves an employee who already elected a survivor benefit and may have assumed that no further action was required, the Annual Notice should have been formatted so as to emphasize information that would have alerted Mr. Beckstead that he was required to act.

In the past, we found OPM's notice of survivor annuity election rights ineffective when it completely failed to mention the need to affirmatively reelect a former spouse survivor annuity after a divorce. *See, e.g.*, *Hairston*, 318 F.3d at 1131 (finding notice ineffective when "[n]oticeably absent from this notice was any notification of the need to affirmatively elect to provide Ms. Hairston with a former spouse survivor annuity"); *Simpson v. Office of Pers. Mgmt.*, 347 F.3d 1361, 1364 (Fed. Cir. 2003) ("The problem was that he did not make that election after the divorce, and OPM's notice did not state that he had to do so again even if he had previously made such an election."); *Wood*, 241 F.3d at 1367 ("The letter received by Mr. Wood from OPM in September of 1986 made no mention of a requirement that he make an election after the divorce."). It is evident, however, that since those cases were decided, OPM has addressed the deficiency in its Annual Notice.

The Annual Notice that OPM sent to Mr. Beckstead each year is less than two pages in length and it contains a category with the heading "3. Survivor Annuity Election for a Former Spouse." SAppx. 39. Under that heading, the Annual Notice provides information about electing a survivor annuity for a former spouse, and it explicitly states:

> Please note that a new survivor annuity election is required within 2 years after the divorce if you wish to provide a former spouse survivor annuity, even if at retirement you elected to provide a survivor annuity for that spouse.

*Id.* The Board found that the Annual Notice was "adequate to inform [Mr. Beckstead] of the Section 8339(j) election requirements." *Board Decision*, 2020 MSPB LEXIS 1897, at *5–6. In view of the explicit statements in the Annual Notice, we have no basis to overturn that finding.

We do not agree with Mrs. Beckstead's argument that the existence of other categories in the Annual Notice—including the first category, which explicitly notes that it is applicable to the "Current Spouse"—renders the Annual Notice misleading. We also reject Mrs. Beckstead's argument that we should second-guess OPM's formatting decisions about which words in the Annual Notice should be emphasized using underlining, bolding, italicizing, and capitalization. At bottom, OPM provided the relevant information, and we cannot hold OPM responsible for Mr. Beckstead's failure to reelect a survivor annuity after the divorce.

It is also worth noting that when Mr. Beckstead initially elected a survivor annuity for Mrs. Beckstead, he did so by filling out Standard Form ("SF") 2801 ("Application for Immediate Retirement"). SAppx. 4–6. SF 2801 includes a section with the heading "Section F – Annuity Election," in which it explicitly states:

> An election for your spouse ends if your marriage ends by death, divorce, or annulment.

SAppx. 5. Immediately below that language, the form again states the effects of divorce, this time in specific reference to the survivor annuity that Mr. Beckstead actually elected:

> If your marriage ends by death, divorce, or annulment, this election terminates and you must notify the Office of Personnel Management.

*Id.*

We have held that the combination of the language in SF 2801 and OPM's Annual Notice constitutes legally sufficient notice of survivor annuity election rights under the law. *Downing*, 619 F.3d at 1378. Therefore, because it is not disputed that OPM sent Mr. Beckstead the Annual Notice, we conclude that OPM met the statutory notice requirements in this case.

### CONCLUSION

We have considered Mrs. Beckstead's remaining arguments but we find them unpersuasive. We therefore *affirm* the decision of the Board.

### **AFFIRMED**

### COSTS

No costs.